(No. 33152.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LAWRENCE HENRY, Plaintiff in Error.

*Opinion filed October 25, 1954.*

CLAYTON & CREDITT, of Chicago, (WILLIAM H. CREDITT, of counsel,) for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (GEORGE W. SCHWANER, JR., JOHN T. GALLAGHER, RUDOLPH L. JANEGA, and ARTHUR F. MANNING, of counsel,) for the People.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

Plaintiff in error, Lawrence Henry, was convicted at a bench trial in the criminal court of Cook County for the unlawful sale of narcotic drugs, and was sentenced to the penitentiary for a term of not less than one nor more than five years. He comes here by writ of error.

Plaintiff in error presents two alleged errors as grounds for the reversal of his conviction: (1) The court erred in admitting and considering testimony about "marked money" after that "marked money" had, on his motion prior to trial, been suppressed as evidence; and, (2) the People failed to prove him guilty beyond a reasonable doubt of the crime of the unlawful sale of narcotics when the proof consisted of the uncorroborated testimony of a drug addict, who was then in police custody for investigation, who admittedly wanted to help himself, and who had not had any narcotics for five or six days.

One Henry Neal, the informer, testifying on behalf of the People, stated that he had been a user of heroin for ten or twelve years, that he had known plaintiff in error for five or six years and had purchased narcotics from him prior to January 24, 1953, the date of the alleged offense in this case. He testified that he had been picked up by the Chicago police as a larceny suspect and on January 23 he was turned over to officers Sims and Bryson of the Narcotics Bureau; that he told them he could purchase narcotics from plaintiff in error and at their request he telephoned him asking for two sixteenths of heroin and was told by plaintiff in error that he had only one on hand. On the following day he called again and was told by plaintiff in error that he could get it and to meet him at a designated place. He stated the police officers then called two Federal narcotic agents and after making a buy and an arrest at another place, they went to plaintiff in error's home. Neal stated that when they arrived near plaintiff in error's home the officers searched him, then gave him three tens and one five-dollar bill, the serial numbers of which were taken down by the officers. Neal then went into plaintiff in error's house, was sent out to buy some coca cola, and when he returned, plaintiff in error handed him a package wrapped in a newspaper which contained two cellophane packages containing a white powderish substance which he delivered to officer Bryson; that when he got the package he gave plaintiff in error the money given to him by the officers. Upon cross-examination, Neal admitted that he wanted to help himself, that he was in custody on a larceny charge, and that he gave plaintiff in error only twenty-five of the thirty-five dollars given to him by the officers, that he lied to plaintiff in error in telling him that was all the money he had, and that he returned the ten dollars to the officers when they asked for it.

Officer Sims corroborated the testimony of Neal as to the telephone conversations, the plan and preparation for

the purchase, and Neal's entering plaintiff in error's home, going for the coca cola, and returning with the package. He stated that he then went into the building, knocked on the door, no one responded, he announced himself and then kicked the door down. Plaintiff in error was talking on the telephone, was placed under arrest and his person searched. In the money found on his person were two tens and one five-dollar bill with the serial numbers on the paper kept by the Federal agents. He further testified that plaintiff in error then told one of the Federal agents that he did not receive the money for the purchase of narcotics but got it from a fellow in exchange for some one-dollar bills.

A finger-print expert testified that he found a print on the glassine envelopes identical with the print of plaintiff in error's left middle finger, and that no two identical prints from different persons have ever been found. Plaintiff in error's counsel stipulated that if the government's chemist who analyzed the substance in those envelopes were present he would testify that they contained heroin hydrochloride, a derivative of opium, to wit, heroin.

Plaintiff in error, testifying in his own behalf, stated that Neal came to his home on January 24, 1953, and gave him $25 in repayment of a loan, that he asked for a drink and went after the coca cola, had a drink and left; that he was talking on the telephone when the officer entered, stated he was under arrest and asked for "that money the boy got the stuff for;" that the officer took the money from him and compared the numbers; that he showed him the package, would not let him touch it, but that he got his hand on the package while it was laying on the table. He denied selling Neal any narcotics. He admitted on cross-examination that Neal called him about narcotics but stated he told him he didn't have any.

To sustain his claim that the court admitted and considered evidence of the "marked money" after its sup-

ression on motion, plaintiff in error in his brief sets out a series of questions which his counsel propounded to the United States Treasury agent Durkin upon cross-examination. In answering these questions, the agent stated that plaintiff in error had the money in his possession, that he had a slip of paper with the serial numbers on it, and that he and plaintiff in error compared the numbers. The court then asked the witness if this was the money he had given Neal, if plaintiff in error had it in his possession, and if it bore the same serial numbers. These questions were answered affirmatively. Plaintiff in error contends that this testimony, elicited by the court, nullified the order suppressing the "marked money" as evidence and was grossly prejudicial.

The People contend that in presenting their evidence both the assistant State's Attorney and the court carefully avoided getting any prejudicial evidence about the marked money in the record, that such evidence was elicited by defendant's counsel in cross-examination. This contention is borne out by the record. The People's witnesses testified in the following order: Witness Neal, officer Bryson, officer Sims, agent Durkin and the fingerprint expert Sheehan. No questions were asked of Neal and no testimony was given by him showing the marked money was found in the possession of defendant. During officer Bryson's testimony he was asked to state the conversation had with defendant in his home immediately after the arrest. The court immediately stated "Objection sustained. That goes to the motion to quash the search warrant." Later the same witness started an answer "They showed him the money that ——," when the court sustained an objection. During agent Durkin's direct examination in stating what was done in defendant's home immediately after the arrest, he started a sentence "Officer Sims removed a quantity of money from Henry's pocket and placed ——." Defense counsel objected and the court sustained the objection. In the cross-exam-

ination of this witness defense counsel asked such questions as: And you showed him (defendant) the money, did you not, and asked him had he taken the money? He (defendant) handed it to you, didn't he? You had a pink slip prepared with with serial numbers on it, do you remember that? You asked him (defendant) to look at the numbers, didn't you? And he looked at them, didn't he?

It is evident from this record that there was no testimony in the record to show the marked money was found in the possession of the defendant until that fact was elicited from agent Durkin by defense counsel's cross-examination. The court had suppressed the marked money as evidence and sustained objections to any testimony tending to connect it to the defendant. But the State is not responsible for questions asked by defense counsel or answers to those questions by the State's witnesses. (*People v. Maciejewski,* 294 Ill. 390.) Nor is the court obligated to exclude or stop the introduction of improper evidence where the defendant makes no objection, does not move to exclude it or does not disclaim the answers. (*People v. Kissane,* 347 Ill. 385.) The defendant cannot complain that evidence which he put into the record is prejudicial to him, and, he having opened the door by showing the marked money in defendant's possession, the questions asked by the court were harmless.

Defendant's second contention, that he was not proved guilty beyond a reasonable doubt because the informer, Neal, was unreliable and uncorroborated is amply refuted by the record. The testimony of the officers corroborated Neal's testimony on the telephone conversations and agreed in every detail, so far as they observed, with the acts and conduct of Neal as testified to by him. The defendant himself on cross-examination corroborated Neal as to the first telephone conversation that Neal talked to him about buying two sixteenths of heroin. We do not see how this witness could have been more fully corroborated. Admittedly

he was a drug addict, he was in police custody and he wanted to help himself. But he stated no promises were made to him by the police and we find nothing in the record to throw any doubt upon the truthfulness of his testimony in this case.

The record is not free from error, but we find no substantial denial of any legal or constitutional right of defendant which affected the judgment of conviction. A reading of the evidence convinces us of the guilt of the defendant beyond any reasonable doubt. The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*