THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ARNOLD SUMMERS, Defendant-Appellant.

(No. 55689;

First District (3rd Division)—June 14, 1973.

Gerald W. Getty, Public Defender, of Chicago, (Lee T. Hettinger and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Bernard Carey, State's Attorney, of Chicago, (Kenneth L. Gillis and Patricia C. Bobb, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant, Arnold Summers, was charged with attempt murder and aggravated battery. After a jury trial in the circuit court of Cook County, he was found guilty of attempt murder. The court placed him on five years probation, the first year to be served in Vandalia.

On appeal defendant contends that: (1) the trial court deprived him of a fair trial by refusing to grant him a continuance; (2) the trial court denied defendant his fundamental right to be present during his trial when the court ordered testimony to continue while defendant was absent; (3) the trial court denied defendant a fair trial by requesting that defense counsel conclude his closing argument; (4) the court erred in not requiring the State to furnish its preparation sheet to the defendant for impeachment purposes; (5) evidence of an unrelated prior criminal act was improperly admitted into evidence; (6) the motion to suppress evidence was erroneously denied; and (7) certain statements of defendant were improperly introduced into evidence.

On March 5, 1969, at approximately 2:30 P.M., defendant shot and wounded Donald Tiske. The shooting occurred on the sidewalk of Tiske's residence, an apartment building located at 4909 Winthrop Avenue in the city of Chicago. Defendant lived in the adjoining apartment building. The incident took place after the two men had a discussion about a barking dog.

At trial Donald Tiske and his wife testified that Tiske picked up his wife at her job at 1:30 P.M. They stopped at a grocery store, and then Tiske drove her home. He intended to return to a tile setting job he was doing at a gas station. When the Tiskes entered their building, defendant was in the lobby ringing various apartment bells. Defendant began cursing, and asked whose dog was barking. Tiske replied that it might be his dog, but that there were several dogs in the building. Defendant then left the building. Mrs. Tiske went up to their apartment and Tiske left the building to return to work. Tiske testified that defendant was in front of the building when he emerged from the lobby. Tiske was walking to his parked automobile, when defendant, who was walking ahead, turned and shot him twice.

Mrs. Tiske testified that to her knowledge her husband had not been drinking on the day in question, and she would be able to tell when he had been drinking. She admitted that when he drank he became belligerent and unruly. Tiske testified that he did not remember whether he had anything to drink prior to the incident.

Defendant testified that he shot Tiske, but did it in self-defense. Defendant went over to the apartment building to complain to the manager about a barking dog. After defendant inquired of the Tiskes about the dog, Tiske yelled that he would cut defendant's head off, and at the same time displayed a knife. Defendant ran out of the building with Tiske following him. Defendant told Tiske to get back, and when Tiske kept advancing, defendant shot him. After the first shot, Tiske did not fall, but kept hopping from side to side. Defendant then shot him the second time.

Defendant testified that he happened to have the gun in his possession because he had tried to sell it. He stated that he did not believe the gun was loaded, but admitted that after the first shot he was aware that it was loaded. Defendant also testified that Tiske was drunk.

Defendant initially contends that the trial court committed reversible error in refusing to grant him a continuance. On Wednesday, October 14, 1970, the last day of trial, after defendant and the only other defense witness, testifying as to defendant's good character, had completed their testimony, defendant requested a continuance of the trial until the following week. The purpose of the continuance was to bring in an additional witness, Doctor A. Madlia. Defendant represented that he did not learn about the doctor until the previous Friday, October 9, 1970, when the State responded to a discovery motion. Defendant had filed the discovery motion on September 28, 1970. Defense counsel stated that he spoke to the doctor on the morning of October 14. The doctor stated that he was too busy all that week, but he would be willing to come to court the following week. Defendant unsuccessfully attempted on October 14 to serve a subpoena on the doctor. Defendant represented that Doctor Madlia was a resident in the emergency room of the hospital to which Tiske was taken after the shooting, and that he would testify that Tiske, when brought to the hospital, appeared to be intoxicated. The judge denied the motion for the continuance.

■■ Motions for a continuance are addressed to the discretion of the trial court and shall be considered in the light of the diligence shown on the part of the moving party. (Ill. Rev. Stat. 1969, ch. 38, par. 114—4 (e); *People v. Clark*, 9 Ill.2d 46, 137 N.E.2d 54.) A reviewing court will not interfere with the trial court's denial of defendant's motion for continuance unless such court has abused its discretion. *People v. Kurtz*, 69 Ill.App.2d 282, 216 N.E.2d 524.

■■ Under the facts and circumstances of the present case we do not believe that the trial court abused its discretion in denying defendant's motion for a continuance. An examination of the record reveals that defendant was arraigned on June 5, 1969, and trial commenced with the

selection of the jury on October 9, 1970. Between arraignment and trial, the case was continued nine times on motion of defendant, and three times by agreement of the parties. Defendant asserts that he did not learn about Doctor Madlia until the State filed answers to his discovery motion on October 9, 1970. However, he did not request discovery until September 28, 1970. And more importantly, defendant did not attempt to serve a subpoena on the proposed witness until October 14, when the trial was virtually completed. Under the circumstances a request to continue the case until the following week was unreasonable and the court did not abuse its discretion in denying the motion.

Defendant's second contention is that he was deprived of his fundamental right to be present at his trial when the court ordered testimony to continue while defendant was absent.

Prior to recessing trial on October 13, the trial judge directed the jury to be present at 9:30 A.M, the following morning so that they could begin promptly at 9:30 A.M. He also cautioned defense counsel not to be late.

At 9:30 A.M. the following morning the defendant was not present. At 9:35 A.M. the judge stated that no one had heard from defendant and resumed the trial proceedings. The judge commented that defense counsel could make an objection if he wished. Defense counsel replied that for the record he was objecting. The State then called Officer Joseph Juhas, one of the arresting police officers. Officer Juhas corroborated the testimony of his partner Officer Don Jacobsen, who had testified on the previous day as to the circumstances of the arrest. Juhas had also testified on the previous day at the hearing on the motion to suppress evidence.

As Officer Juhas completed a brief direct examination, the prosecutor observed for the record that defendant had arrived in court. Without request for delay or any reference to defendant's earlier absence, defense counsel conducted a cross-examination of Officer Juhas.

■■ A defendant in a criminal case has a constitutional right to be personally present at all stages of his trial. (*People v. Mallett*, 30 Ill.2d 136, 195 N.E.2d 687.) However, in *People v. Colon*, 9 Ill.App.3d 989, 293 N.E.2d 468, this court held that where a defendant is at liberty on bail and voluntarily absents himself from his trial after it has begun, he waives the right to be present and the court can proceed without him. It should also be observed that in *Colon* the defendant was absent for the principal part of the trial.

■■ We believe that a trial court should be loath to permit a trial to proceed in defendant's absence. However we hold that in the instant case the trial court's decision to proceed with the trial did not result in

any prejudice to defendant. Defendant missed only a small portion of the officer's testimony. After defendant arrived, defense counsel conducted a vigorous and extensive cross-examination of the witness, and revealed no need to confer with defendant. Moreover, the officer had testified to substantially the same facts on the previous day in defendant's presence during the hearing on the motion to suppress evidence. The trial court did not commit reversible error in allowing the trial to proceed in defendant's absence.

Citing *People v. McMullen,* 300 Ill. 383, 133 N.E. 328, defendant next argues that the trial court committed reversible error in restricting defense counsel's closing argument.

During defense counsel's closing argument, the prosecutor interposed an objection to a statement made by defense counsel. At that juncture the trial judge commented that defense counsel was running way over the time limit for argument. When counsel replied that he had not agreed to a time limit, the judge remarked that he had set one. Defense counsel stated that he wounld sum up in two minutes, and concluded his argument within a few minutes.

In *McMullen* the defendant was charged with armed robbery. The Supreme Court held that given the serious nature of the charge and the length of the trial, the imposition by the trial court of a thirty-five minute time limit for closing argument by defense counsel was unreasonable, and the court reversed the conviction.

■■ In the present case, the record is silent as to any time limit for argument having been set by the court. In any event, the record clearly reveals that defendant was not prejudiced by the action of the court. The trial was brief, and the issues were not complex. The taking of testimony began on October 13 and concluded the following day. Defendant admitted the shooting, but maintained that he did it in self-defense. To resolve that principal issue, the jury had to determine defendant's credibility as compared to that of the Tiskes. Defense counsel presented a closing argument which was lengthy, thorough and complete. The record indicates that he was able to cover in detail every issue and all of the testimony adduced at trial, often more than once. Defendant was not prejudiced by the court's suggestion that the argument be concluded shortly.

Defendant's fourth contention is that the trial court erred in not requiring the State to furnish its preparation sheet to the defendant for impeachment purposes. A preparation sheet, or "prep" sheet, is a résumé of a witness's testimony before the grand jury. It is given by the witness after testimony before the grand jury to a typist outside the grand jury

room and, according to the instant prosecutor, consists of the "highlights of the witness's testimony before the grand jury."

Prior to Donald Tiske's cross-examination, the prosecutor, outside the presence of the jury, stated that he was tendering defendant his whole file, including the grand jury minutes and his prep sheet. He stated, however, that the prep sheet was attached to his copy of the indictment, and that he was afraid that defense counsel would keep it throughout the trial. After an extended discussion, the trial court ruled that defense counsel could read the contents of the preparation sheet and then return it to the prosecutor, ruling that the document was not substantially verbatim.

■■ The State is required to furnish on demand to the defendant for impeachment purposes specific statements in its possession made by a State's witness which have been established to exist and which are in the witness's own words or substantially verbatim. (*People v. Neiman,* 30 Ill.2d 393, 197 N.E.2d 8.) And in an appropriate case, a prosecution preparatory sheet may be such a statement. *People v. Robinson,* 46 Ill.2d 229, 263 N.E.2d 57.

■■ We consider it unnecessary to reach the issue of whether the instant preparation sheet qualified as a statement to be furnished to defendant for impeachment purposes. Despite the trial court's ruling that defense counsel return the prep sheet to the prosecutor, a study of the record shows that defense counsel examined both Donald Tiske and Officer Jacobsen concerning their interviews with the typist after their grand jury testimony. It is evident that defendant was not prejudiced by the ruling of the court.

Defendant's fifth contention that evidence of unrelated prior criminal acts was improperly admitted into evidence is without merit. Without objection, the prosecutor elicited testimony from a police officer that the serial numbers of the weapon in question had been removed, and from defendant that he had not registered the gun.

■■ A trial court is not compelled to exclude improper evidence when the defendant makes no objection to it or does not move to exclude it. (*People v. Henry,* 3 Ill.2d 609, 122 N.E.2d 159.) In the present case, defendant did not object to the introduction of the evidence, and cannot now complain. In any event, the testimony complained of had no appreciable significance and, even if improperly admitted, constituted harmless error.

Defendant's sixth contention is that the trial court erroneously denied his motion to suppress the evidence. Prior to trial defendant filed a motion to suppress the weapon. Officers Don Jacobsen and Joseph Juhas

of the Chicago Police Department were the only witnesses at the hearing on the motion.

The officers testified that when they arrived at the scene of the shooting, they were informed by a citizen that the offender had run into the adjoining building where he lived on the fourth floor. The officers went up to the fourth floor, but knocked on the wrong door, and defendant came out of the apartment next door. Defendant entered the hallway and said to Jacobsen whom he knew previously: "Hi Jacobsen, I did it. I shot him." After giving him his warnings, Officer Jacobsen asked defendant where the gun used in the shooting was. Defendant replied that it was in the apartment in his coat pocket, and Officer Juhas recovered it. The judge denied the motion to suppress the evidence.

■■■ Search by consent is a waiver of the constitutional protection against illegal searches. (*People v. Harris*, 34 Ill.2d 282, 215 N.E.2d 214.) In our opinion, the instant search was not coercive, but was made pursuant to the defendant's voluntary consent. While the police were knocking on another tenant's door, defendant walked into the hallway, greeted one of the officers by name and stated that he had done the shooting. Thereafter he informed the officers where the gun was. At trial, defendant testified that his actions were voluntary, and defense counsel stated that defendant had given the gun to the officers. We believe that the search was not such as is proscribed by the Constitution, and that the trial court properly denied the motion to suppress the evidence. Moreover, under the instant facts and circumstances, an erroneous ruling would not have been prejudicial to defendant.

■■ Defendant's final contention is that certain exculpatory statements made by him to the police were improperly introduced into evidence. He admits receiving *Miranda* warnings, but argues in this court that they were incomplete. Defendant did not object to the introduction of the testimony at trial, and has waived any objection to its introduction.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

SCHWARTZ and McGLOON, JJ., concur.