THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MELVIN TIMMS, Defendant-Appellant.

First District (4th Division)   No. 61914

Opinion filed April 6, 1978.

James J. Doherty, Public Defender, of Chicago (James L. Rhodes, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The defendant, Melvin Timms, was indicted for the armed robbery of Raphaelda Whalen. Following a jury trial he was convicted on that charge and sentenced to four to 12 years in the Illinois State Penitentiary.

On appeal defendant contends his conviction should be reversed because his guilt was not proved beyond a reasonable doubt. Alternatively he seeks a new trial on the following grounds: the trial court abused its discretion by denying defendant's motion for a continuance to secure certain witnesses; he was prejudiced when the trial court erroneously told the jury he was indicted for attempt murder; the prosecution's examination and argument together with police officers' testimony referring to another crime were prejudicial; he was denied effective assistance of counsel. Finally defendant contends that his sentence was excessive.

We reverse and remand for a new trial.

Two eyewitnesses, Raphaelda Whalen and Reginald Kirby, testified for the State. Mrs. Whalen, 68 years old at the time of trial, testified that on January 16, 1970, she was working as a clerk in a grocery store at 12315 South State Street in Chicago. At about 2:15 or 2:30 that afternoon Reginald Kirby came into the store and she cashed his check for him. They had been talking for a few minutes when a young black man came into the store and walked up to the checkout counter where Mrs. Whalen was standing. He asked for a package of Kool cigarettes, paying for it with a $10 bill. As Mrs. Whalen gave him his change, the man pointed a silver pistol at her and demanded all her money. She took all the bills from the cash register and threw them on the counter. The man then pointed the pistol at Mr. Kirby, who also laid his money on the counter. Mrs. Whalen screamed and the man said to get on the floor behind the counter. The man put the money in his jacket and fled. The police were called and when they arrived Mrs. Whalen described the man as a young Negro, about 25, weighing about 135 pounds, height about 5'3" or 5'5". He wore a black leather jacket and dark pants, was clean-shaven, without a moustache and his hair was cut short. She had observed him for a total of two to three minutes. The following day she identified the defendant in a lineup. The police at that time also showed her two guns and she told them one looked like the gun which had been used in the robbery. Mrs. Whalen identified the defendant in court as the man who had robbed her.

Mr. Kirby also testified that he was in the store at about 2:15 or 2:30 talking to Mrs. Whalen after having cashed his paycheck. At that time a black man, identified in court by Mr. Kirby as the defendant, walked in. After buying a pack of Kools the man pointed a silver automatic pistol at

both Mr. Kirby and Mrs. Whalen and demanded their money. They put the money on the counter and defendant put it in his pockets. He ordered Mr. Kirby to go to the end of the store, and then fled. When the police arrived Mr. Kirby described the man as a male Negro about 5'4" or 5'5", weighing about 135 pounds, wearing a black leather jacket and dark pants. Mr. Kirby also testified that the man was clean-shaven and had no moustache, but he did not tell the police this because they did not specifically ask. During the robbery he observed the man's face for about five minutes. The following day he did not observe a lineup but he was shown one gun which he told the police looked like the weapon which had been used.

Police Officer Richard Ehrmann testified that on January 17, 1970, he and his partner were on duty in a squadrol when they received a radio message describing a car. They spotted a car fitting the description and curbed it at 111th and King Drive in Chicago. As they approached they saw a nickel-plated .32 automatic, silver in color, on the floor of the car. Three men were in the car, including the defendant who was in the back seat with the gun next to him. The three men were ordered out of the car and taken to the police station. At the station a search of the car was made and another gun was found in the glove compartment. Both guns were loaded. According to Officer Ehrmann he was unable to obtain those weapons for production in court because on the date of his trial testimony he discovered that they had been destroyed pursuant to court order. Officer Ehrmann could not recall what defendant was wearing when he was arrested but he did testify that defendant was clean-shaven, with no moustache or beard.

Investigator James Doyle testified that he conducted the lineup at which Mrs. Whalen identified the defendant as the man who had robbed her. Four other men, all black, were used in the lineup. Two were police officers in plain clothes and two were the men arrested with the defendant. They were all 21 to 24 years old and ranged in height from 5'6" to 6'1". Doyle recalled that defendant was wearing a black leather jacket at the time of his arrest.

Defendant presented an alibi defense. His mother, Julia Timms, testified that all day on January 16, 1970, defendant was with her at her home in Pembroke, Illinois, which is located about 65 miles from Chicago. Defendant was on leave from the army and had to return the next day. His wife, Yvonne, was pregnant and was staying with Mrs. Timms. Mrs. Timms testified that at 2 p.m. that day the other people she remembered being there were her son, Peter, Yvonne, and defendant. Her husband, Austin Timms, a minister and the mayor of Pembroke, was "in and out" and she could not recall whether he was there at 2 p.m. Her son Ray and his wife Mona would get home around 4:30 p.m. Her

daughter Bessie left for school at 7 a.m. and returned at 3 p.m. The next morning at 7 a.m. Bruce Ray picked up the defendant to take him to the airport. Mrs. Timms recalled that at the time defendant had a moustache though it "probably was light."

Yvonne Timms, defendant's wife, also testified that she was with defendant all day on January 16, 1970, at the home of Mrs. Timms. Also there all day were Bessie, Ray, Peter and Austin Timms. Ray's wife, Mona, was also there that day. At 7 the next morning defendant left for Chicago with Bruce Ray.

Defendant testified that on January 16, 1970, he was at his parents' home in Pembroke all day. His home at the time was at 1156 E. 131st in Chicago, in the Altgeld Gardens housing project, but he was stationed with the army in Colorado and was staying with his parents on vacation leave. Also at his parents' home that day were Yvonne, Bessie, Peter, Ray and Mona and defendant's parents. The next morning Bruce Ray picked up the defendant to take him to O'Hare. The car broke down in Chicago on the Dan Ryan and defendant took a bus to Altgeld Gardens. There he contacted an acquaintance, Norbert Scott, who agreed to take defendant to the airport. Scott told defendant that he first had to pick up some things for his wife. Scott and defendant, accompanied by a third man, Darryl Ransom, then drove to the area of 115th and Michigan. Scott parked the car there and got out. Defendant, who had also gotten out, was looking at several stores while waiting for Scott to return. He then saw Scott yelling and waving his arms near the car and then saw him enter the car and begin to drive away. Thinking they were joking with him, defendant ran to the car and jumped into the back seat. After a short distance the car was stopped and the three occupants were arrested. Defendant did not see a gun in the car, only seeing one when a policeman took it from the car. Defendant testified that at the time he had a light moustache and a light goatee. He did not own and was not wearing a black leather jacket. Defendant further testified at the time of trial he was 5'5½" and weighed 135 to 140 pounds.

## I.

■■ ■ Defendant's first contention is that his guilt was not proved beyond a reasonable doubt. Two eyewitnesses to the robbery positively identified the defendant as the man they saw. They testified to giving descriptions which matched that of the defendant. Although defendant maintained that contrary to their descriptions he had a light goatee and moustache at the time of the offense, their description of him as clean-shaven was corroborated by Officer Ehrmann. Nor does the police photograph of the defendant show a clear moustache or goatee. Furthermore, where an identification is positive, precise accuracy in

describing facial characteristics is not essential. (*People v. Marbley* (1975), 34 Ill. App. 3d 434, 340 N.E.2d 247.) The day after providing this description Mrs. Whalen identified the defendant in a lineup consisting of five men of the same race and the same general age range. The record does not clearly establish whether, as defendant alleges, he was the shortest man by four inches in that lineup. But even if this was true, we have held that such height differences are not unnecessarily suggestive. (*People v. Wyatt* (1974), 23 Ill. App. 3d 587, 319 N.E.2d 575; *People v. Scott* (1974), 20 Ill. App. 3d 880, 314 N.E.2d 671.) Defendant also contends that Mrs. Whalen's in-court identification was tainted because she had seen him in three prior court appearances. This factor only went to the weight to be given to her identification at trial. It should be noted that the trial court allowed defense counsel great latitude in minimizing prejudicial factors ordinarily attendant in such in-court identifications: Mrs. Whalen was first asked if she saw the man who robbed her when defendant was not present in the courtroom; then with defendant sitting in the gallery she was again asked the question. It was only at that time that she pointed out defendant. Mr. Kirby also identified the defendant in court.

■■ It is defendant's position that his alibi testimony, corroborated by two other witnesses, cannot be ignored. In support of this proposition he cites *People v. Gardner* (1966), 35 Ill. 2d 564, 221 N.E.2d 232. But in *Gardner* the court spoke of not disregarding defendant's alibi only in the context of what they had determined was a weak identification by a single witness. Also in that case defendant's alibi was corroborated by physical evidence, a theater ticket which tended to show that he had been elsewhere when the crime occurred. Certainly there is no general obligation on a trial court or jury to believe alibi testimony instead of the positive identification of state witnesses. (*People v. Jackson* (1973), 54 Ill. 2d 143, 295 N.E.2d 462; *People v. Whitley* (1977), 49 Ill. App. 3d 493, 364 N.E.2d 511.) The jury did not have to ignore the testimony of defendant and his family members in order to ultimately reject it. Clearly the jury did reject that alibi testimony. And the remaining testimony which they evidently believed, that of the State's witnesses, was sufficient to establish defendant's guilt beyond a reasonable doubt.

## II.

Defendant, however, also suggests that his right to a fair trial was prejudiced when the trial court denied his attorney's motion for a one-day continuance to allow three additional witnesses to come in and testify. This request was made at the beginning of the second day of trial, when counsel informed the court he had just learned the witnesses could not come in that day. The witnesses were the defendant's father, Reverend

Austin Timms, defendant's brother, Ray Timms, and Bruce Ray, who defendant had testified started to take defendant to the airport only to have his car break down. The court was informed that Reverend Timms' car had broken down on the way to court; Ray Timms and Bruce Ray had both been unable to get away from their jobs that day. Defense counsel had included these men in his list of witnesses prior to trial but had not subpoenaed them. The trial court took the motion under advisement during the day while the testimony of the defendant was presented. At 3:30 that afternoon defendant renewed his motion and at that time the court denied it. One more defense witness was examined and then after final argument the jury began its deliberations. The jury did not reach its decision until the following day.

■■ ■ The law concerning this matter was well stated in *People v. Robinson* (1973), 13 Ill. App. 3d 506, 510, 301 N.E.2d 55, 57:

> "The granting or denial of a continuance to obtain evidence or procure a witness is within the discretionary powers of the trial court. [Citation.] When reviewing the exercise of the court's discretion, this court must determine whether defendant had acted diligently in his attempts to obtain the evidence [citation], whether the evidence would be material to the case and might affect its outcome [citation], and whether defendant has been prejudiced in his right to a fair trial. [Citation.]"

We have noted that these witnesses were not subpoenaed. The State contends that this in itself establishes a lack of due diligence. We agree insofar as the witness Bruce Ray is concerned, for defendant's testimony established that Bruce could not get off work because he was not subpoenaed. But we cannot agree in the case of the two family members, who counsel reasonably expected would come in on their own and who, according to the representations of counsel and defendant, were delayed by last-minute events unrelated to the issuance of a subpoena. The cases cited by the State in which failure to issue subpoenas was cited by the courts in finding no abuse of discretion are distinguishable in important details. In *People v. Brown* (1976), 41 Ill. App. 3d 641, 354 N.E.2d 602, the court noted that testimony at the trial extended to the day after counsel requested a continuance, and he did not renew the request that second day. In *People v. Thomas* (1972), 4 Ill. App. 3d 535, 281 N.E.2d 447, counsel was given a two hour recess to bring in the witness, who would only have corroborated uncontradicted matters. In *People v. Summers* (1973), 12 Ill. App. 3d 893, 299 N.E.2d 462, counsel did not interview the witness until five days after he learned of his existence, at which time the trial was nearly completed. When his attempt to subpoena the witness that day failed counsel asked for a continuance until the next week, although this was on a Wednesday. Here counsel according to his

representations had no expectation that the two family witnesses would not appear, the issuance of subpoenas would not have affected the intervening events, and counsel's final request for a continuance of only one day came late in the afternoon on the second day of trial. Under these circumstances we find no lack of diligence such as would call for denial of counsel's motion.

The second factor to be considered, materiality, would also support the trial court's decision as to Bruce Ray. All three prospective witnesses submitted affidavits as part of defendant's motion for a new trial. Ray's affidavit, and defendant's testimony on the matter, establish that his testimony would have only corroborated defendant on a collateral matter, whether defendant was being driven to the airport the morning after the robbery at which time Ray's car broke down. Ray could not even have corroborated defendant's version of his arrest on that day, for he was no longer with him at that time according to the defendant. The absence of a witness whose testimony would corroborate only collateral aspects of defendant's testimony is not sufficient justification for a continuance. (*People v. Edwards* (1973), 55 Ill. 2d 25, 302 N.E.2d 306, *cert. denied* (1974), 415 U.S. 928, 39 L. Ed. 2d 486, 94 S. Ct. 1438.) However, the materiality of the testimony of Reverend Timms and Ray Timms is evident, and the State concedes the point. They would have directly testified in corroboration of defendant's alibi, according to their affidavits. Both stated in those affidavits that on January 16, 1970, defendant was at his parents' home all day.

■■ The State argues that the testimony of Reverend Timms and Ray Timms, though material, would only have been cumulative and repetitious, therefore not affecting the outcome of the trial. We cannot agree with this conclusion. The credibility of the defendant and his alibi witnesses was crucial in this case. His father's testimony, being that of a minister and a mayor of a town, could well have affected the jury in their credibility determination. These factors make his testimony more than mere repetition of that of other family members. The case of *People v. Godbout* (1976), 42 Ill. App. 3d 1001, 356 N.E.2d 865, cited by the State, is not analogous. There the trial judge had already heard the same witnesses' testimony on one motion to suppress and the reviewing court noted that the trial judge could keep in mind that testimony when the second motion to suppress was presented, without hearing that testimony again. In *People v. DeMary* (1967), 37 Ill. 2d 364, 227 N.E.2d 361 the testimony sought would only have corroborated in a collateral manner the testimony of other witnesses on a matter tending to impeach a key State witness. And in *People v. Webster* (1959), 17 Ill. 2d 177, 161 N.E.2d 104, *cert. denied* (1959), 361 U.S. 920, 4 L. Ed. 2d 188, 80 S. Ct. 267 the reviewing court did not state what the testimony sought would have been, nor did it

discuss who the witnesses were; it merely concluded that the testimony would have been cumulative. Here the testimony sought was directly in support of defendant's only defense at trial, that of alibi, and it would have been given by one witness in whom the jury might have placed a special degree of confidence because of his status in his community. The continuance was ultimately sought in the late afternoon for only one additional day. In this trial in which credibility was of utmost importance we cannot say that the exclusion of this testimony might not have affected the determination of the jury.

## III.

■■ Although we would reverse and remand solely on the basis of the failure to grant a continuance, we note one additional matter which supports that determination. At the outset of the trial, in remarks to the entire panel of prospective jurors, the trial judge stated:

> "Ladies and gentlemen, you've been called to my courtroom in connection with a criminal case in which an indictment has been returned by the Cook County Grand Jury charging the defendant, Melvin Timms, with having committed the offense of armed robbery and attempt murder."

There was no immediate objection, but following an off-the-record conference with counsel the court stated:

> "The charge that the defendant is charged with in the case at bar is the charge of armed robbery rather than—I think the court indicated at the time that it was armed robbery and attempt murder. Attempt murder is not a count that you are to consider in this indictment. The only count that we are dealing with is a count of armed robbery."

The defendant was only charged with armed robbery. These statements by the trial judge may have left the jury with the impression that a charge of attempt murder was also pending against the defendant. The prejudicial nature of this suggestion, although clearly inadvertent, supports our conclusion that defendant should be granted a new trial.

Because of our determination of these issues we need not discuss the other matters raised by defendant, as they are unlikely to occur on retrial.

The judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.

DIERINGER and LINN, JJ., concur.