THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
ROBERT EUGENE WADDELL, Defendant-Appellee.

Fourth District   No. 4—89—0044

Opinion filed October 31, 1989.—Rehearing denied December 15, 1989.

916

Donald D. Bernardi, State's Attorney, of Pontiac (Kenneth R. Boyle, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Louis P. Johnson and Lawrence J. O'Neill, both of Johnson & Johnson, of Metropolis, for appellee.

JUSTICE SPITZ delivered the opinion of the court:

This is an appeal by the State from an order of the circuit court of Livingston County granting the motion of defendant Robert Eugene Waddell to quash the warrantless arrest of defendant. Defendant had been charged by information with the unlawful possession of less than 15 grams of a controlled substance. Ill. Rev. Stat. 1987, ch. 56½, par. 1402(b).

After being charged by information, defendant filed several motions, including a motion to quash his arrest. The basis for the motion to quash the warrantless arrest was alleged to be that the arresting officers possessed no reasonable belief nor any reasonable grounds to believe defendant was committing an offense at the time defendant's vehicle was stopped approximately two miles north of Route 116 on Interstate 55 in Livingston County. The motion stated probable cause was allegedly supplied to the arresting officer by an informant, but "the identity, credibility, and reliability of said informant is so lacking and insufficient as to render the arrest illegal and unconstitutional for want of probable cause."

On January 9, 1989, a hearing was held on the various defense motions, including the motion to quash. Initially, the State presented the testimony of witnesses relating to defendant's motion to suppress all confessions, statements, or admissions. After the motion to suppress was denied, the State was allowed to examine Jean Stover, an employee of the Illinois State Police at the Morton laboratory. Stover was introduced as a witness in the State's case on the complaint for forfeiture of defendant's vehicle. Although the issue of forfeiture was not litigated on January 9, the parties agreed to allow Stover to testify at that hearing. Of significance to the case at bar was Stover's testimony that a powdery substance on a mirror found in the trunk of defendant's automobile was not shown to be a scheduled substance.

The only witness called to testify on defendant's motion to quash the arrest was Gary King, a sergeant with the Department of Criminal Investigation of the Illinois State Police. King testified that on August 18, 1988, a confidential source who had provided reliable information to King in the past advised him a person named Johnson telephoned the source earlier that day and asked to borrow the source's car for purposes of driving it to Chicago, where Johnson intended to purchase one-half ounce of cocaine. The informant called King to ask for advice. King advised his informant to offer to accompany Johnson to Chicago, but not to let them use the confidential source's vehicle. King did not know why Johnson did not drive his own car to Chicago.

Before the informant could propose this alternate plan, Johnson called back to say that defendant was going to drive him from Bloomington to Chicago and back again in defendant's automobile. Johnson said that a person named Harris would also be accompanying them. Johnson requested the informant to telephone the appropriate connection in Chicago to arrange for the pick up of one-half ounce of cocaine. The informant told Johnson to notify him when they began the return trip. Nothing in the informant's conversation with King indicated defendant was going to be involved in the purchase or had any knowledge of the purpose for driving to Chicago. This informant had not mentioned defendant's name previously in connection with drug transactions in Illinois, but King assumed the confidential source knew defendant personally, as he did Johnson and Harris, because the source knew the color, make, and license-plate number of defendant's car. King admitted, however, the source's knowledge of the make and model of defendant's car could have been provided by Johnson.

The informant, after recounting the substance of the second conversation with Johnson, advised King that Waddell owned a 1979 gold Toronado Oldsmobile with "Dollar 4" on the license plates. The informant also advised King that Johnson would be carrying the cocaine in the crotch of his pants.

At approximately 6 p.m., the confidential source telephoned Johnson's connection in Chicago and learned that the sale had been completed and that Johnson and the others had just left for Bloomington. The informant telephoned King to advise him of these facts. King and the source estimated that the trio would arrive in Bloomington in about two hours. King testified the police had independently confirmed the fact that Johnson, Waddell, and Harris had driven to Chicago.

On the basis of this information, King and six other police officers stopped defendant's car at approximately 8 p.m. on Interstate 55 in Livingston County, near Bloomington. Defendant was driving the car, which was the color and make the confidential source had described and bore "Dollar 4" license plates.

According to the testimony given at the hearing on the motion to suppress by Officer Kirk Lonbom, police officer for the city of Clinton, by Trooper Paul Steidinger of the Illinois State Police, and by Michael Bernardini, special agent with the Illinois State Police Division of Criminal Investigation, the defendant, Johnson, and Harris exited the vehicle and were frisked for weapons. A packet, which subsequent chemical analysis revealed contained 13.9 grams of a white powdery substance containing cocaine, was found in the crotch of

Johnson's pants. Defendant, Johnson, and Harris were placed in handcuffs upon exiting the vehicle. Defendant gave the police permission to search his car. The vehicle was searched by an officer using a dog. Among the things found in the trunk of the car was a mirror which was covered with a white powdery residue. As noted earlier, the subsequent chemical analysis of the white powdery residue from the mirror failed to reveal the presence of a controlled substance. The record does not indicate whether defendant was handcuffed before or after consenting to the search of the vehicle, but it is clear defendant was handcuffed prior to the search. This detainment lasted 15 to 20 minutes.

Following Sergeant King's testimony, defense counsel asked the court to rule on the motion to quash. The State's Attorney objected to a summary ruling at that point on the ground he had not been given an opportunity to present his own evidence and he wanted to call the confidential source, who had not been subpoenaed for the hearing, but who could possibly provide relevant testimony on the issue of probable cause to arrest if the court would grant a short continuance. The State's Attorney did not advise the court when the witness would be available to testify, even though asked to do so, and merely informed the court that the need for the witness was not anticipated for this hearing. Defense counsel stated the State's request might be justified had King equivocated as to what was said about defendant, but he was opposed to a continuance where King did not express uncertainty about the substance of the information the confidential source related to him. The State's Attorney countered with the argument that the confidential source would testify that on August 18 he related more information to Sergeant King regarding the drug transaction than King recalled and recounted in his testimony at this hearing five months after the event. The court denied the motion for a continuance on the ground King did not indicate he had forgotten any of the information revealed to him by the confidential source. The trial court indicated the production of the source as a witness would probably be futile in this case.

The court then granted the motion to quash, finding there was no probable cause for the police to believe Waddell purchased drugs or possessed drugs as no information to that effect had been given to police. Instead, all the information available to the police was that another party was purchasing the drugs and would be concealing and transporting the drugs. Without further information available to officers at the time of arrest to attribute knowledge of a drug's presence, the trial court decided defendant cannot be charged on an accountabil-

ity theory with possession of drugs concealed upon the body of the passenger.

The first issue we will consider is whether the State was denied a fair hearing by the trial court's denial of a request for a short continuance in order to produce an additional witness. A motion for continuance is addressed to the sound discretion of the trial court, and the trial court's ruling on such a motion will not be disturbed on appeal in the absence of a showing of an abuse of discretion. (*People v. Peterson* (1979), 70 Ill. App. 3d 205, 387 N.E.2d 951.) Factors to be considered in determining whether an abuse of discretion has occurred include: (1) whether the moving party has acted diligently to obtain the evidence; (2) whether the evidence is material and might affect the outcome; and (3) the related prejudice to the parties which would result from the trial court's ruling. (See *People v. Timms* (1978), 59 Ill. App. 3d 129, 375 N.E.2d 1321.) Certainly, the trial court has the discretion to deny a continuance to a defendant who is merely attempting to thwart the efforts of the trial court to move the court calendar or to the State where the request for a continuance improperly obstructs the defendant's right to a speedy trial. (*People v. Edwards* (1981), 97 Ill. App. 3d 407, 422 N.E.2d 1117.) Whether an abuse of discretion occurred depends on the facts of the case, and the reviewing court's evaluation of the trial court's decision must be made in light of the circumstances existing at the time of the request. *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.

The State argues it is fundamental to the adversarial system that the State be given the opportunity to present witnesses. The State cites *People v. Elliott* (1987), 162 Ill. App. 3d 542, 515 N.E.2d 1302, in which the court did conclude the State had a right to present evidence and to cross-examine defendant's witnesses at a hearing on a motion to suppress where the trial court had refused to allow the State to cross-examine the arresting officer who had been called as a witness by defendant. Under section 114—4(c)(2) of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 114—4(c)(2)):

> "A written motion for continuance made by the State more than 30 days after arraignment may be granted when:
> \*\*\*
> (2) A material witness is unavailable and the prosecution will be prejudiced by the absence of his testimony; however this shall not be a ground for continuance if the defendant will stipulate that the testimony of the witness would be as alleged."

Section 114—4(e) of the Code states that "[a]ll motions for continu-

ance are addressed to the discretion of the trial court and shall be considered in the light of the diligence shown on the part of the movant." Ill. Rev. Stat. 1987, ch. 38, par. 114—4(e).

The State relies on *People v. Grimm* (1979), 74 Ill. App. 3d 514, 392 N.E.2d 1138, and *People v. Edwards* (1981), 97 Ill. App. 3d 407, 422 N.E.2d 1117. In *Edwards*, the court's refusal to grant the State a continuance resulted in an acquittal which the appellate court reversed and remanded. The State had requested a continuance to March 24, 1980. The trial court had granted a five-day continuance to March 24, 1980, for two other defendants in the case. Since the State had indicated an intent to try the defendants together and no motion for severance had been filed, the appellate court felt it was an abuse of discretion for the trial court to deny the State's motion for a continuance as to Edwards. In *Grimm*, the State asked for a continuance because the State's sole witness had become ill the evening before the bench trial was to begin and was unable to appear to testify. Since no prior continuance had been sought and no other delay had been occasioned by the State, it was an abuse of discretion to deny the continuance. The *Grimm* opinion relies on the rationale used in *People v. Deems* (1979), 74 Ill. App. 3d 543, 392 N.E.2d 1118. *Deems*, and therefore *Grimm*, relies heavily on the fact that the defendant's right to a speedy trial (Ill. Rev. Stat. 1987, ch. 38, par. 103—5) has not been impaired by the State's motion for a continuance. And this is primarily the State's argument in the case at bar as well.

■ However, impairment to the right to a speedy trial is not the only prejudice which may occur to a defendant under the facts of the present case. It seems fundamentally unfair to require defendant to present his evidence on the motion to quash and then, when the burden of going forward shifts to the State, to allow the State a continuance to prepare the evidence to be presented. The confidential source was not unavailable as a witness. The State simply had not asked the source to appear in court. Through a lack of diligence, the State was not prepared to proceed. In *People v. Timms* (1978), 59 Ill. App. 3d 129, 375 N.E.2d 1321, and in *People v. Tillman* (1980), 82 Ill. App. 3d 430, 402 N.E.2d 825, motions for a continuance to obtain evidence were determined to be properly denied where the only reason the witness was unable to appear was because the witness was not subpoenaed. In fact, there was no showing here that the source was employed or was otherwise difficult to secure as a witness such that a subpoena would even be required. The State's Attorney admitted he simply had not anticipated the need for that witness.

■ Most importantly, however, the trial court is correct in saying

that it was not what the confidential source knew or told King which was important, but it was what King, and the other officers, understood to be the facts which could form the basis of a reasonable belief that defendant was committing or had committed an offense at the time of his arrest. In short, the confidential source, as a witness, could add nothing to the hearing on the motion to quash since King had testified to the facts which formed the basis for the belief that defendant had committed or was committing a criminal offense. For all of these reasons, the trial court did not commit an abuse of discretion in denying the State's motion for a continuance under the facts of this case.

The remaining issue to consider is whether the trial court erred in quashing defendant's warrantless arrest on the ground the police did not have probable cause to believe that defendant, the driver of the car at the time of the arrest, had knowledgeable control of the contraband which a passenger in the car had concealed in the crotch of his pants.

The trial judge did not say there was no probable cause to stop the vehicle, but only that there was no probable cause to arrest defendant for what Johnson was carrying. The trial court was under the impression at the preliminary hearing that the charge against defendant stemmed from the residue discovered on the mirror in the trunk, which residue was later shown to contain no scheduled substance, and the judge was concerned the State was attempting to use statements defendant made to Lonbom after defendant was arrested to establish defendant's knowledge of the cocaine Johnson possessed and therefore to establish probable cause to arrest defendant.

In *People v. Tisler* (1984), 103 Ill. 2d 226, 469 N.E.2d 147, the Illinois Supreme Court extensively discussed the rules for determining probable cause to arrest, with or without a warrant, probable cause to search, with or without a warrant, and the proper consideration to be given an informant's tip. Whether probable cause exists to issue a warrant in a particular case turns on the totality of the circumstances and facts known to the officers and court. It is the probability of criminal activity, not proof of the crime beyond a reasonable doubt, which is the standard for determining whether probable cause is present. Whether the necessary probability exists is governed by commonsense considerations. Whenever a police officer has proceeded without a warrant to search, seize evidence, or arrest a person, the trial court's probable cause determination applies standards as stringent as those utilized to decide whether to issue a warrant. Under the Code, a warrantless arrest is possible only when a peace officer "has

reasonable grounds to believe that the person is committing or has committed an offense." (Ill. Rev. Stat. 1987, ch. 38, par. 107—2(1)(c).) "Reasonable grounds" has the same substantive meaning as "probable cause." A warrantless arrest meets the reasonable grounds, probable cause requirement if the trial court decides a reasonable and prudent person, having the knowledge possessed by the officer at the time of the arrest, would believe the defendant committed the offense. The officer's factual knowledge, including his prior law-enforcement experience, is to be considered. The police officer need not have personally observed the facts forming the basis for probable cause. The officer's statements may be based on hearsay, such as an informant's tip. If the facts supplied in the tip are essential to a finding of probable cause, the tip must be reliable. The *Tisler* court relied heavily on *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317, wherein the Supreme Court held a magistrate should look to the totality of the circumstances when assessing an affidavit relying on an informant's story. The trial court must make a practical, commonsense decision whether the circumstances, including the veracity and basis of knowledge of the informant, create a fair probability that contraband or evidence of a crime will be found in a particular place. Also emphasized was the value of independent police investigation that corroborates the details of the informant's story. In other words, when a tip is proved accurate as to some details, the information is more likely correct about other details, including the alleged illegal activity. This corroboration reduces the risk the informant's tip stems from rumor or fabrication. Before reviewing all the circumstances presented to the trial court in order to determine whether the arrest was unlawful, we note that a reviewing court will not disturb a trial court's finding on a motion to suppress, unless that finding is manifestly erroneous. *People v. Reynolds* (1983), 94 Ill. 2d 160, 165, 445 N.E.2d 766, 769; *People v. Haskell* (1968), 41 Ill. 2d 25, 30, 241 N.E.2d 430, 433.

At the time the vehicle was stopped, the police knew defendant was driving Johnson from Bloomington to Chicago and back and that Johnson's reason for the trip was to purchase cocaine. While it is possible defendant had no knowledge or involvement with the purchase of the cocaine, it is more probable than not, from a commonsense point of view, that defendant was aware of the purpose of the trip, if not when they left Bloomington, then at least after they left Chicago. The trial court's stated concern that an entire bus load of people could be arrested on the basis of what one passenger possessed has no validity. Nevertheless, the State's direct assault on the reasoning

of the trial court does not necessarily demonstrate that the ruling was manifestly erroneous. Instead, a step-by-step analysis must be utilized.

First, the trial court specifically found there was probable cause to stop the vehicle. Second, the trial court refused to suppress any statements made by defendant. We do not know exactly what defendant's statements were. When Lonbom was testifying, he was asked to relate what defendant had told him. However, defendant's counsel objected to going into the specifics of the statement at the suppression hearing. The objection was sustained. Nevertheless, the trial court found something was lacking at some point between the time the vehicle was stopped and the time the statements were made.

What transpired during this time? The police detained and frisked defendant, obtained defendant's consent to search the vehicle, searched the vehicle and found what appeared to be evidence of an additional crime, placed the defendant under arrest, and transported defendant to the station. All of this was done without advance judicial approval by way of obtaining a warrant.

■■■ ■ Even though a police officer does not possess probable cause to make an arrest, a police officer may approach persons to investigate possible criminal activity and to frisk the individuals to ascertain the presence of weapons in order to protect the police officer and prospective victims of violence. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) In Illinois, these rules have been embodied in the Code. Section 107—14 provides:

> "A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense as defined in Section 102—15 of this Code, and may demand the name and address of the person and an explanation of his actions. Such detention and temporary questioning will be conducted in the vicinity of where the person was stopped." (Ill. Rev. Stat. 1987, ch. 38, par. 107—14.)

Section 108—1.01 provides:

> "When a peace officer has stopped a person for temporary questioning pursuant to Section 107—14 of this Code and reasonably suspects that he or another is in danger of attack, he may search the person for weapons. If the officer discovers a weapon, he may take it until the completion of the questioning, at which time he shall either return the weapon, if lawfully possessed, or arrest the person so questioned." (Ill. Rev. Stat.

1987, ch. 38, par. 108—1.01.)

Under the facts of this case, it was certainly reasonable for the police to detain defendant for the purpose of investigating a crime and, in the process, frisk defendant for weapons.

While being detained, defendant consented to a search of the vehicle. No issue is raised in this appeal concerning the voluntariness of the consent.

██ This search produced from the trunk of defendant's car a mirror with a white powdery substance on it. It was this mirror with the powder on it which the trial court understood at the preliminary hearing to form the basis of the charge against defendant. This statement by the judge gives the impression that had the substance on the mirror been shown to be a scheduled substance, then the arrest would not have been quashed. But, as is pointed out in *Tisler*, the test of a valid arrest is not whether the defendant can be proved guilty beyond a reasonable doubt, but whether a reasonable and prudent person, knowing what the police officer knew at the time of the arrest, would believe defendant committed an offense.

If defendant could properly be arrested based on the evidence obtained from the trunk, then the arrest should not have been quashed. If after the arrest the defendant made statements which inculpated him in the Johnson transaction and which statements could support the accountability charge, the charge relating to the mirror could be dropped at the discretion of the State's Attorney for insufficient evidence. Neither logic nor common sense would require the State's Attorney to proceed on both charges after subsequently learning that the case on the initial charge could not be proved beyond a reasonable doubt.

██ We agree with the trial court that probable cause to arrest defendant cannot be established because the officers reasonably believed defendant had constructive control of the contraband. The basis for the doctrine of constructive possession is that under the circumstances of the case it may be fairly inferred the defendant knew of the presence of the contraband. There is no evidence from which the police officers at the time of the arrest could reasonably believe the defendant, owner and operator of the transporting vehicle, knew Johnson was carrying cocaine while Johnson was a passenger in the car or knew of the purpose of the trip and was voluntarily participating in this criminal activity. While the informant probably need not expressly supply such information and the officers certainly can look to the circumstances, applying their experience and common sense, the very limited information available to the officers concerning

defendant's activities does not lend a great deal of support to the accountability argument. However, this alone does not deprive the officers of probable cause to arrest defendant based on the mirror in the trunk.

At this stage, the sole problem which must be resolved is whether the fact the defendant was handcuffed as soon as he stepped out of the vehicle constituted an arrest, as opposed to a stop. If the handcuffing constituted an arrest, then the subsequently discovered powdery residue on the mirror could not provide probable cause for the arrest.

As is stated in his treatise entitled Search and Seizure, Wayne R. LaFave states:

> "A stopping for investigation is not a lesser intrusion, as compared to arrest, because the restriction on movement is incomplete, but rather because it is brief when compared with arrest, which (as emphasized in *Terry*) is inevitably accompanied by future interference with the individual's freedom of movement, whether or not trial or conviction ultimately follows." 3 W. LaFave, Search and Seizure §9.2(d), at 363 (2d ed. 1987).

In the case at bar, the police functions of crime detention and crime prevention seem to be intermingled. In *Terry*, the officer was investigating the suspects on the basis of his reasonable belief a daylight robbery was about to be attempted. Crime prevention was the purpose of that stop, as opposed to crime detection, which is the investigation of a suspect's involvement in a crime which has already been committed. Here, the officers did not know the extent of defendant's involvement in the criminal activity. Surely, they could investigate. The testimony was that the officers wanted not only to detect a crime which was already being committed, but also to prevent cocaine from reaching the street.

The question remains whether handcuffing defendant transformed the stop into an arrest under the facts of this case. Handcuffing, alone, may not transform an investigative stop into an arrest, depending upon the circumstances. In *United States v. Glenna* (7th Cir. 1989), 878 F.2d 967, an officer handcuffing a suspect during an investigative stop did not transform the stop into an arrest where the suspect was handcuffed after the officer found ammunition in one of the suspect's pockets. In *Howard v. State* (Alaska App. 1983), 664 P.2d 603, the court discussed the line between arrest and investigative stop and decided that drawn guns and handcuffing do not necessarily turn a stop into an arrest as long as the force employed is proportionate to the risk reasonably foreseen by the officers at the time of the stop. In

*State v. Belieu* (1989), 112 Wash. 2d 587, 773 P.2d 46, the court recognized that merely pointing a gun at a suspect does not automatically change an investigative stop into an arrest, but the investigative method must be the least intrusive means reasonably available and the force used should bear some reasonably proportionate relationship to the threat apprehended. For example, in *United States v. Thompson* (9th Cir. 1979), 597 F.2d 187, investigative officers were justified in handcuffing defendant where defendant ignored repeated warnings not to reach inside his pockets during a pat-down search for weapons.

No Illinois case has been found which has held that handcuffing does not transform a stop into an arrest. In *People v. Rodriquez* (1987), 153 Ill. App. 3d 652, 505 N.E.2d 1314, defendant was handcuffed, placed in the back of a squad car and read the *Miranda* rights even though defendant had not resisted officers or acted so as to justify the restraint employed. The court concluded that was an arrest. In *People v. Gabbard* (1979), 78 Ill. 2d 88, 398 N.E.2d 574, the Illinois Supreme Court noted that the State admitted the handcuffing constituted an arrest and the court agreed. However, the facts in *Gabbard* clearly show more than mere handcuffing in reasonable response to a perceived threat. Defendant was picked up after being observed walking along a highway 30 miles north of Springfield at about 7 a.m. When asked where he was going, defendant said Springfield. When asked where he was coming from, defendant said Springfield. The officer asked for identification, defendant produced a checkbook. Even though the officer observed what appeared to be a driver's license in the checkbook, defendant denied having any further identification. Thereafter, the officer ordered defendant to put his head forward on the dashboard of the squad car and to put his hands behind him, drew a weapon, and handcuffed defendant.

In the case at bar, approximately seven officers participated in the stop of the subject vehicle. The suspects were asked to exit the vehicle, they did and were handcuffed. Pat-down searches were conducted, and defendant consented to the search of the vehicle. Defendant was then placed in a squad car while a police dog was used in the search of the vehicle. This detention lasted 15 to 20 minutes. After the search, defendant was taken to the station. Before driving defendant to the station, an officer read the *Miranda* rights to defendant.

■ From a commonsense point of view, there is nothing unreasonable about police officers being apprehensive concerning the risks inherent in interdicting drug traffic. Similarly, merely because the suspect being apprehended may not be in possession of a firearm, does not mean the police officer is out of danger. (See *People v. Salazar*

(1988), 126 Ill. 2d 424, 535 N.E.2d 766.) Here the handcuffing of defendant did not transform the *Terry* stop of defendant into an arrest. Therefore, the evidence found in the trunk of a vehicle owned and operated by defendant and which appeared to be cocaine, where the officers were investigating the offense of possession of cocaine based on an extremely reliable tip from an informant, could provide the probable cause for arresting defendant. The motion to quash the arrest should have been denied.

Accordingly, the order of the circuit court of Livingston County quashing the arrest of defendant is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

KNECHT and GREEN, JJ., concur.