THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EDWARD TILLMAN, Defendant-Appellant.

First District (4th Division)   No. 78-2128

Opinion filed March 20, 1980.

---

[2] And let us not forget that generally in Illinois, post-conviction petitions may be filed within 20 years after rendition of final judgment. Ill. Rev. Stat. 1977, ch. 38, par. 122—1.

Walter LaVon Pride, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Pamela L. Gray, and Mary A. Jischke, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

A jury found defendant, Edward Tillman, guilty of attempt murder (Ill. Rev. Stat. 1977, ch. 38, par. 8—4), and two counts each of aggravated battery and aggravated battery by use of a deadly weapon (Ill. Rev. Stat. 1977, ch. 38, pars. 12—4(a), 12—4(b)(1)). Defendant was sentenced to 10 years in the Illinois Department of Corrections for the attempt murder of Ida Cooper and 5 years on one count for the aggravated battery of Keya Cooper, the sentences to run concurrently.

In his appeal to this court, defendant asserts he was denied due process when he was not permitted a continuance to bring a witness before the court, and when he was subjected to an improper hospital show-up. Defendant further contends he was denied a fair and impartial trial when the court requested that defendant read his list of witnesses to the jury. Additionally, defendant claims the State failed to prove him guilty of attempt murder beyond a reasonable doubt.

We affirm the trial court.

On April 18, 1977, at approximately 12:30 a.m., Ida Cooper and her young daughter, Keya, were seated in a car at 79th Street and Coles Avenue, in Chicago, across the street from their residence. Ida Cooper turned off the ignition and prepared to get out of the car when she saw a man standing nearby, holding a gun. The illumination of the street light located in front of her car enabled her to determine the gun was of a .38-caliber make, and she could see the gun was pointed at her head. The man, without speaking, then fired the gun twice, and she and Keya immediately fell to the floor of the car. She heard the gun fire four more times. Ida Cooper was shot in the face under her left eye, in her left elbow, and in her right hand. The child, Keya, was shot in her left knee and right shoulder.

After the shots were fired, an off-duty policeman approached the car, spoke briefly to Ida Cooper and her daughter, then ran in pursuit of the man. Uniformed policemen arrived shortly thereafter and transported them to the hospital where Ida Cooper was taken directly into the intensive care unit and Keya was treated in the emergency room.

According to the evidence, Officer Tim Hardy arrived at the scene to investigate the shooting. He examined the car and discovered four bullet holes in the front windshield, the driver's window completely shattered, and blood on the front seat. He went to the hospital and talked with Keya in the emergency room. She told Officer Hardy she and her mother had

been shot by Edward Tillman, whom they knew. She informed the police officer that at the time of the shooting Edward Tillman was wearing a multicolored vest. She also described the type car Tillman drove and the area he often frequented.

Officer Hardy then went to 724 East 79th Street where he saw a man wearing a multicolored vest and black clothing. The police officer approached the man and asked his name; the man identified himself as Edward Tillman. Officer Hardy arrested Tillman and later identified him in court as the defendant. A search of defendant's person and car did not reveal a weapon. Defendant was immediately taken to the hospital where Keya identified him as her and her mother's assailant.

Ida Cooper and defendant had known each other for approximately 5 years prior to the incident. They had dated each other for most of that time, but the relationship was discontinued about 1 year prior to that incident. During that year, defendant persisted in following Ida Cooper from work, often made threatening phone calls to her, and was seen on several occasions parked outside her parents' home. Late in 1976, defendant called Ida Cooper and told her he wanted to continue their relationship, but she declined his invitation. Defendant thereupon made certain remarks which Ida Cooper interpreted to be a threat upon her life. Thereafter, she called the police and, subsequently, through police court procedures, defendant executed a peace bond, assuring that he would not interfere with Ida Cooper. On the Monday before the incident, Ida Cooper saw defendant in his car not far from her apartment. She reported this to the police by telephone.

At trial, by way of alibi, defendant testified he and his brother, Leonard Tillman, were attending a birthday party on April 17, 1977, at the home of their parents. Defendant was there from 2 p.m. until 11:15 p.m. He took his date home and went to the El Continental Lounge. The bartender at the lounge saw him arrive at 11:45 p.m. Defendant was to meet his friend, Clarence Boatman, at the lounge. Boatman did not arrive until 12:30 a.m., April 18. Defendant and Boatman had a drink and left the lounge together. While the two stood outside the lounge, the police arrived and arrested defendant. Defendant testified he was wearing a black shirt, black trousers, and a multicolored vest at the time of his arrest. He also indicated his height to be 6 feet 2 inches and his weight to be 170 pounds.

Defendant further testified that Ida Cooper was his girlfriend and was employed, describing her employment as "something like a call girl." According to defendant, Ida Cooper gave him 50 percent of the money she made from prostitution, but he had not had anything to do with her activities except to provide her transportation.

According to defendant, in 1976 he and Ida Cooper went to a hotel

and after they left he noticed $200 missing from his pocket. When he questioned her, she denied taking the money. He also testified about a disagreement they had over money withdrawn from a joint checking account.

Officer Paul Williams of the Chicago police department testified he had a conversation with Norman Roberson, a Cook County sheriff's police officer, who was off duty and happened to be near the scene of the shooting. As a result of the conversation, Officer Williams sent a message over the radio, describing the suspect as a dark-complected male Negro, about 35 years old, approximately 5 feet 9 inches in height, weighing 130 pounds, and wearing a short haircut.

After hearing all of the evidence at trial, the jury deliberated and returned verdicts of guilty of attempt murder of Ida Cooper, two counts of aggravated battery of Ida Cooper and two counts of aggravated battery of Keya Cooper.

Defendant challenges the court's denial of his motion for continuance in order for him to locate a witness listed but not called by the State. The need for the witness, it is contended by defendant, is based on the fact that Officer Paul Williams, who arrived at the Cooper car shortly after the shooting, gave a description of the assailant somewhat different from characteristics of the defendant. The description he gave was:

> "One male Negro, approximately thirty-eight years of age, five foot nine, approximately one hundred-thirty pounds, dark complected, wearing short haircut."

Defendant testified he is 6 feet 2 inches in height and weighs 170 pounds.

After Officer Williams' testimony and after all other evidence was presented, defendant made a motion for continuance to gain additional time to locate Norman Roberson, the original source of the description. Defense counsel represented to the court that several attempts to communicate with Roberson had been unsuccessful. The motion was denied, the trial court noting the motion was untimely, having first been made at the end of presentation of defendant's case, and further noting there was no outstanding subpoena for Roberson's appearance before the court. It is defendant's contention that he was denied a fair trial when the court denied his motion for continuance in order to produce an additional witness.

This court considered a similar contention in the case of *People v. Timms* (1978), 59 Ill. App. 3d 129, 135, 375 N.E.2d 1321, 1325. In *Timms*, the defendant contended his right to a fair trial was prejudiced when the court denied his attorney's motion for a continuance to allow additional witnesses to appear and testify. The court, noting that the witnesses were not subpoenaed, cited the rule in *People v. Robinson* (1973), 13 Ill. App. 3d 506, 510, 301 N.E.2d 55, 57:

"The granting or denial of a continuance to obtain evidence or procure a witness is within the discretionary powers of the trial court. [Citation.] When reviewing the exercise of the court's discretion, this court must determine whether defendant had acted diligently in his attempts to obtain the evidence [citation], whether the evidence would be material to the case and might affect its outcome [citation], and whether defendant has been prejudiced in his right to a fair trial. [Citation.]"

In applying the test crystalized in *Timms*, we first question the diligence of defendant in attempting to secure the witness. Defendant cites the case of *People v. Allen* (1976), 35 Ill. App. 3d 342, 341 N.E.2d 431, in which the court denied defendant's motion for a continuance to locate a witness where the record did not indicate previous attempts to contact the witness, nor were there any assurances that the witness would be available in the near future. Defendant distinguishes his own authority, in *Allen*, by stating that defendant's attorney made numerous attempts to contact the witness. The record discloses that attempts to bring the witness before the court were made by defense counsel as well as the Assistant State's Attorney. The question remains as to why no subpoenas were issued for the witness. Where it is known that a witness is employed or otherwise difficult to bring before the court, the failure to issue a subpoena may indicate lack of due diligence. (*Timms*, at 135.) We conclude from the evidence presented that defendant was not diligent.

Defendant argues that by not calling Roberson the State failed to comply with Supreme Court Rule 412 (Ill. Rev. Stat. 1977, ch. 110A, par. 412), pertaining to the disclosure by the State of information within its possession or control. This argument fails because the State actually assisted defense counsel in attempting to locate the witness. The only information withheld from defendant was the State's decision not to call a listed witness.

In a criminal prosecution, the State is not required to call every witness listed by it as witnesses who may be called in its case, and no inference adverse to the State may be drawn from the State's failure to call an available witness. (*People v. Murray* (1975), 34 Ill. App. 3d 521, 544, 340 N.E.2d 186, 203.) At trial, Officer Williams was called by the defense to testify regarding the description given him by Norman Roberson. The description was admitted into evidence. In our opinion, the testimony of Norman Roberson could only have been cumulative and would not have been material to the case, nor would its presentation have affected the outcome. The discrepancy between defendant's physical characteristics and those described by Officer Williams was properly placed before the jury and cannot be reweighed by this court. (See *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313.) We find no

showing by defendant that the trial court's refusal to grant a continuance embarrassed defendant, impeded the preparation of his defense, or prejudiced his rights so as to merit reversal of his conviction. *People v. Gray* (1978), 61 Ill. App. 3d 243, 246, 377 N.E.2d 1311, 1314.

■ Defendant asserts he was denied due process of law because shortly after the shooting he was brought to the hospital and was there subjected to an improper identification procedure. In *Stovall v. Denno* (1967), 388 U.S. 293, 302, 18 L. Ed. 2d 1199, 1206, 87 S. Ct. 1967, 1972, the United States Supreme Court stated: "The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." However, not every viewing of a suspect is to be considered a denial of due process. (*People v. Blumenshine* (1969), 42 Ill. 2d 508, 512, 250 N.E.2d 152, 154.) Because it was shown that defendant was well known to the witness prior to the crime, testimony regarding the identification of defendant at the hospital was properly admitted. (*People v. Robinson* (1969), 42 Ill. 2d 371, 375-76, 247 N.E.2d 898, 900.) In *Robinson*, the court said:

> "Questions relating to identification of one suspected of a crime, as were found in cases such as *Stovall v. Denno*, do not appear where, as here, the person identified was known to the trial witness prior to the crime."

In our case, Officer Hardy went to the hospital and talked to Keya Cooper in the emergency room where she was being treated. She told Officer Hardy what the defendant was wearing. She also gave him a description of defendant's car and provided the location of the area where defendant might be found. Keya had known defendant for about 5 years, due to his relationship with her mother. When Officer Hardy brought defendant to the hospital, Keya identified him as the man who shot her and her mother. Defendant indicated at the hospital that he knew Keya and her mother.

Clearly, defendant was known to both witnesses before the crime and was described and identified by Keya at the hospital. There is nothing in the record to indicate the identification procedure at the hospital was unnecessarily suggestive and conducive to irreparable mistaken identification so as to support defendant's contention that he was denied due process. (See *People v. Robinson* (1969), 42 Ill. 2d 371, 247 N.E.2d 898.) The testimony regarding the hospital identification was properly admitted.

Further, defendant contends he was denied a fair and impartial trial when the court requested that he read his list of witnesses to the jury in open court. The record indicates the following discourse took place on the first day of trial:

"[THE COURT]: The State will call names. If you recognize any of those names, please stand up.

MR. MAGENCE [assistant State's Attorney], The People may or may not call the following witnesses to testify: * * *.

THE COURT: I take it none of those names are familiar to you.

Mr. Meltreger [defense counsel], do you wish to call the names of the witnesses in addition to these whom they may or may not call.

MR. MELTREGER: Yes, your Honor.

The following witnesses may or may not be called on behalf of the defendant: * * *."

No objection was made by defense counsel to the court's request for a reading of the list of witnesses. The failure to object at trial to the request for a reading of the list of witnesses waived the issue for consideration by this court. Beyond that conclusion, defendant has shown no prejudicial impact upon the ensuing trial sufficient to warrant a reversal. There was no reversible error in the trial court's requesting both parties to read their respective lists of witnesses.

The issue of whether defendant was proved guilty of attempt murder beyond a reasonable doubt turns on the identification made by the victims. Defendant suggests the victims could not see their assailant prior to or during the shooting, and their identification was tainted by his prior relationship with Ida Cooper, which would lead her to assume defendant's culpability. We are not persuaded by either suggestion.

Defendant's argument as to his height being too great to provide a view from the car by the victims should have been made to the jury during trial. It is well settled that a reviewing court may not substitute its judgment for that of the jury on questions regarding the weight of the evidence or the credibility of the witnesses, and we will not reverse a criminal conviction unless evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, 1320.) Nonetheless, we note from the record that there was a lighted street light in front of the car. Assuming, *arguendo*, that Ida Cooper had a less-than-ideal opportunity to view her assailant, Keya was sitting in the front seat on the passenger's side and had an independent opportunity to view defendant in the illumination of the street light. The jury had ample basis upon which to find Keya and Ida Cooper credible and their identification of defendant persuasive.

Defendant's prior business and romantic relationships with Ida Cooper strengthen the State's case rather than weaken it as defendant would suggest. Defendant would argue Ida Cooper was motivated by revenge in her identification, and Keya was influenced by her mother's

feelings toward defendant. However, this should not dilute the rule that testimony of an identification witness is strengthened to the extent of *any* prior acquaintance with the accused. (*People v. Horobecki* (1977), 48 Ill. App. 3d 598, 602, 363 N.E.2d 1, 3.) Both Ida Cooper and Keya had known defendant for approximately 5 years. That degree of familiarity along with the combined opportunities the victims had to view the assailant would not be inconsistent with the finding of the jury. There is no basis upon which to find the State failed to prove defendant's guilt beyond a reasonable doubt.

For the aforesaid reasons, we affirm the conviction.

Affirmed.

LINN, P. J., and ROMITI, J., concur.