2021 IL App (1st) 191238-U

FIRST DIVISION
March 29, 2021

No. 1-19-1238

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No.  16 CR 10375 |
| | ) | |
| DOMINIQ GREER, | ) | Honorable |
| | ) | William Hooks, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE PIERCE delivered the judgment of the court.
PRESIDING JUSTICE WALKER and JUSTICE COGHLAN concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant was proven guilty beyond a reasonable doubt.  The trial court did not err.  Defendant's conviction for murder under count six is vacated and the mittimus corrected.

¶ 2    Following a bench trial, defendant, Dominiq Greer, was convicted of six counts of first-degree murder and was sentenced to 50 years' imprisonment.  Defendant now appeals and argues: (1) he was not proven guilty beyond a reasonable doubt; and (2) the trial court committed multiple errors that led to his conviction.  For the following reasons, we affirm the judgment of the trial court but vacate defendant's conviction for murder under count six and

1

order that defendant's mittimus reflect a single conviction for first degree murder on count five.

¶ 3                                    BACKGROUND

¶ 4      Defendant was charged with six counts of first-degree murder for his role in the murder of Kevin Larry.  The following facts were adduced at defendant's bench trial.

¶ 5      Tommie Hollis testified that he lived in a three-bedroom apartment at 5632 South Wabash in Chicago on May 27, 2016,with his fiancé, Jennifer Smith, his sister, Nadine Liberty, and his sister's boyfriend, "Mike Mike." Tommie's friends, Timothy "Tin Man" Taylor, and the victim, Kevin "Pyro" Larry, also lived in the apartment.   Larry had been staying in the living room of the apartment for a couple months before his murder.

¶ 6      Tommie was awoken at approximately 6:00 a.m. on May 27, 2016, by someone kicking at the front door of the apartment. He got out of bed and went to the door.  Tommie opened the door "before it got kicked all the way in" and saw defendant. Tommie stated that he had known defendant as "Dommo" for a couple of months and said that defendant would "come around" the apartment "every other day," approximately 40 or 50 times.

¶ 7      When Tommie opened the door, he noticed defendant "was just angry. He was aggravated. He was mad at something."  Defendant came in and played dice for a while and left.  Tommie fixed his door, locked it, and walked to a nearby gas station with Jennifer. On the way to the gas station, Tommie saw defendant, Tin Man, and "E-Boy" shooting dice on the street. Tommie and Jennifer returned to the apartment five or six minutes later and entered through the back door because Tommie "didn't want anybody to know that [he] was coming in." Larry was sleeping in the living room.  Tommie and Jennifer went into the bedroom and turned on the television.

¶ 8      A while later, Tommie heard a group of people shooting dice in the apartment and left his bedroom "to see what was going on." Tommie saw Tin Man, E-Boy and defendant shooting dice

2

between the table and the living room television. Larry was sleeping on the floor. Tommie saw that there was a black handgun with an extended clip on a table near defendant. After an argument broke out, E-Boy left the apartment. Tin Man and defendant continued shooting dice until Tin Man eventually got up and went to his bedroom. The gun was still on the table. Tin Man returned to the living room but did not have a weapon. Another argument broke out between Tin Man and defendant over money. Tin Man walked towards the door of the apartment and Tommie returned to his bedroom but could still hear arguing in the living room. A little over a minute later, Tommie heard Tin Man leave the apartment. Tommie then heard defendant say either, "Get the fuck out of folks crib" or "Get out of folks fuckin' crib," and heard Larry respond, "I didn't do nothing." Tommie then heard a gunshot and then heard defendant then say, "Call the ambulance." He also heard defendant say, "I should have killed the whole fucking house."

¶ 9      After hearing this, Tommie and Jennifer jumped out of their bedroom window. They saw Nadine and Mike exiting their bedroom window also. He saw police officers and an ambulance arrive as he was leaving. Tommie returned to the building later as the police were leaving. He went to the police station and gave them a description of defendant and later identified defendant in a photo lineup as the shooter.

¶ 10     At trial, Tommie identified defendant wearing a white tank top and holding a jacket in a surveillance video from across the street. Tommie noted that defendant's right hand was in his right pants pocket. Tommie did not know the other individual defendant was walking with in the video.

¶ 11     The parties stipulated that, if called to testify, Lorra Turner would testify that she owned the building at 5633 South Wabash. Ms. Turner would testify that she had a security camera that faces both her front yard and back alley. She would further testify that she recorded the

3

surveillance video from May 27, 2016, from 7:30 a.m. until 7:33 a.m. and tendered it to police.

¶ 12    Jennifer Smith testified that she was living at 5632 South Wabash on May 26, 2016, with Tommie, Nadine, Mike Mike, Tin Man, and the victim. She went to bed at some point before midnight on May 26, 2016. At 6:30 or 7 a.m. the next morning, Jennifer and Tommie left the apartment to go to the gas station. When they returned, Jennifer and Tommie entered through the back door and returned to their bedroom.

¶ 13    On cross-examination, Jennifer testified that she was not sure if Tommie ever left the bedroom but did not see him leave the room.  At some point, Jennifer heard Tin Man and defendant talking in the living room. It sounded like they were playing a dice game, and that defendant "wanted to shoot for five and Tin Man didn't want to." Defendant's voice was louder, but eventually the voices stopped. Jennifer then heard a gunshot coming from the living room. Jennifer and Tommie climbed out of their window and saw police cars in front of the house. Later that day,  Jennifer went to the police station to speak with detectives and identified defendant in a photo array as one of the individuals she heard in her living room that morning. At trial, Jennifer identified defendant in the security video from 5633 South Wabash.  She had never seen the individual walking with defendant before.

¶ 14    Chicago Police Detective Nicholas Evangelides was assigned to investigate the homicide at 5632 South Wabash on May 27, 2016. When he arrived at the scene, he saw the victim lying on the floor of the first-floor apartment. Detective Evangelides noted that the victim was deceased and saw a gunshot wound to the victim's upper chest and an exit wound to the victim's lower back. Detective Evangelides found a fired bullet on the floor beneath the victim's body and a shell casing in the front area of the apartment. He also found dice near a bedding area by the television.

¶ 15    Detective Evangelides noted that his partners later interviewed Tommie, Jennifer, Nadine,

and Eric "E-Boy" Banks at the Area Central police station. One of the witnesses provided a description of the shooter: "A male black. I think his name was Dommo, with a, I believe, with a Crooked I tattoo on his neck."  Detective Evangelides searched the database and located defendant based on this description to include in photo arrays.  Detective Evangelides noted that a tattoo on defendant's neck was a "sideways M." He later learned that that Jennifer and Tommie both identified defendant in photo arrays. Based on all this information, an investigative alert was created, and an arrest warrant was issued for defendant.  Defendant was subsequently identified during a televised press conference for an unrelated matter and arrested on June 8, 2016.

¶ 16    On cross-examination, Detective Evangelides testified that there was a "high confidence ballistics correlation" between the shell casing found at 5632 South Wabash and a firearm located as part of an unrelated investigation. On redirect examination, Detective Evangelides noted that the firearm was located during an arrest of an individual by the name of Andre Anderson on July 26, 2016. Andre Anderson told Detective Evangelides that he was shopping for "his high school prom" at the time of the victim's murder on May 27th and had multiple alibi witnesses to corroborate his story.

¶ 17    The parties then stipulated that, if called to testify, Dr. Eric Eason of the Cook County Medical Examiner's Office would testify as an expert in the field of pathology. He would testify that he performed an autopsy on the victim and that, in his opinion, the cause of death was a gunshot wound to the torso and the manner of death was homicide.

¶ 18    The State rested.  Defendant's motion for directed finding was denied.  Defendant rested without presenting evidence. The circuit court found defendant guilty of all six counts of first-degree murder. The court found Tommie and Jennifer to be credible witnesses and stated, in relevant part:

"Let me just state that the testimony of both Jennifer Smith and Mr. Hollis, is clear that they both know [defendant] and they both recognize his voice from previous dealings. Defense counsel did the best he could with cross-examination on those points, but the court finds the testimony of the two principle witnesses in this case, Miss Jennifer Smith and Mr. Tommy [sic] Hollis, to be credible. There is no question in this court's mind concerning the voice attributed to [defendant], the loud voice attributed to [defendant], apparently the clear voice attributed to [defendant].

***

Comments concerning, "get the fuck out of folk's *** crib." That's a comment attributed to the defendant in this case. Then there was a comment attributed to the victim, "I didn't do nothing. I didn't do anything." That comment is attributed to the victim in this case, Kevin Larry, shortly before a shot rang out after which there was silence. Then there was a comment of "I should have killed the whole fucking house."

***

During the course of this trial a video camera from a nearby premise was played which showed the defendant leaving the premise in question shortly after based on the time stamp, the shooting, indeed, the murder took place. He left with another person. I believe that the video showed he had his hand in his pocket. The court does not remember seeing a bulge from his clothing. But he left, was picked up by the video camera.

***

The questions is whether or not the State met its burden of proof beyond a reasonable doubt under the circumstances, the circumstantial circumstances that I have here. The comments, the conduct, the totality of the circumstances as between the

6

defendant and those persons in the room right next to his room, the finding of the bullets that later are tied to a gun, the exiting of the defendant from the scene of the situation in this court's assessment gives this court the circumstantial evidence that forces the court to make a finding that the defendant is guilty of first degree murder."

¶ 19    Defendant was sentenced to 50 years' imprisonment.  The circuit court denied defendant's motion to reconsider sentence. This appeal followed.

¶ 20                                                ANALYSIS

¶ 21    Before we address the merits of defendant's argument, we must address the State's argument that defendant's brief is in violation of Illinois Supreme Court Rule 341(h)(6), which requires that the statement of facts "shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal."  The State argues that defendant's statement of facts clearly includes several argumentative comments.  However, the State urges us to ignore the argumentative comments "in an effort not to further delay the proceedings."

¶ 22    We agree that defendant has not complied with the requirements of Rule 341(h)(6) because his statement of facts is replete with argument, however, the argumentative statements included in defendant's statement of facts did not hamper our review of merits of this case.  We reviewed the record in this case, as well as the State's statement of facts.  Accordingly, we decline to strike defendant's statements of facts in the entirety and we will disregard any statements of fact that contain improper argument.  Counsel for defendant is admonished that any future violation of Rule 341(h)(6) will not be tolerated.

¶ 23    Next, although defendant did not request that his convictions be merged, the State concedes that one of defendant's convictions for first degree murder should be vacated, and

defendant's mittimus should be corrected to reflect one count of murder for the one victim he killed. Defendant was convicted of all six counts of murder and the mittimus shows all six counts. However, there is a note on page two of the mittimus that states that counts one through four are merged into counts five and six. Count Five charged defendant with intentional murder while personally discharging a firearm that proximately caused death and was eligible for a 25-year sentencing enhancement. 730 ILCS 5/5-8-1(d)(iii) (West 2016). Count Six charged defendant with knowing murder while personally discharging a firearm that proximately caused death and was eligible for a 25-year sentencing enhancement. 730 ILCS 5/5-8-1(d)(iii) (West 2016).

¶ 24 The one-act, one-crime rule prohibits multiple convictions when the convictions are based on precisely the same physical act. *People v. Miller*, 238 Ill. 2d 161, 165 (2010). Only one conviction and sentence may be imposed if the same physical act forms the basis for prosecuting. *People v. Segara*, 126 Ill. 2d 70, 76-77 (1988). However, if guilty verdicts are obtained for multiple counts arising from the same act, then a sentence should be imposed on the most serious offense. See *People v. Donaldson*, 91 Ill. 2d 164, 170 (1982). In *In re Samantha V*., 234 Ill. 2d 359, 379 (2009), our supreme court instructed that when determining the most serious offense, a court of review should "consider the plain language of the statutes, as common-sense dictates that the legislature would prescribe greater punishment for the offense it deems the more serious." If the punishments are identical, then the reviewing court must determine which offense has the more culpable mental state. *Id.* at 379.

¶ 25 We can only sustain a conviction on the most serious offense. Intentional murder involves a more culpable state than knowing murder. Therefore, defendant's sentence should be imposed on count five. See *People v. Artis*, 232 Ill. 2d 156, 170 (2009); *People v. Walton*, 378 Ill. App. 3d 580, 590 (1st Dist. 2007). Accordingly, we vacate defendant's conviction for

8

murder under count six and order that defendant's mittimus reflect a single conviction for first degree murder on count five.

¶ 26    Turning to defendant's arguments, defendant argues that the State failed to prove him guilty of first-degree murder beyond a reasonable doubt.  Defendant urges that the evidence against him was  "flimsy from the outset" and "grew even more flimsy at trial' and contends that the trial court committed four fundamental errors that contributed to its finding defendant guilty: (1) mistakenly recalling the evidence at trial; (2) "failing to acknowledge or resolve the fundamental inconsistencies between the testimony of Ms. Smith and Mr. Hollis;" (3) "expressly relying on inadmissible evidence;" and (4) "failing to draw an adverse inference against the State from its unexplained failure to call two important witnesses."

¶ 27    When reviewing the sufficiency of the evidence in a criminal case, we must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Smith*, 185 Ill. 2d 532, 541 (1999).  We will not reverse a criminal conviction unless the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt.  *People v. Rowell*, 229 Ill. 2d 82, 98 (2008). A reviewing court does not retry the defendant or substitute its judgment for that of the trier of fact with regards to the credibility of witnesses or the weight to be given to each witness' testimony. *People v. Jackson*, 232 Ill. 2d 246, 281 (2009).  Rather, we "carefully examine the evidence while bearing in mind that the trier of fact is in the best position to judge the credibility of witnesses, and due consideration must be given to the fact that the fact finder saw and heard the witnesses." *People v. Herman*, 407 Ill. App. 3d 688, 704 (2011).

¶ 28    A person commits the offense of first-degree murder when he kills an individual without

lawful justification, either intending to kill or do great bodily harm to that individual or another or knowing that such acts will cause death to that individual or another. 720 ILCS 5/9-1(a) (1), (2) (West 2016). The evidence presented at trial, viewed in the light most favorable to the State, was sufficient to establish defendant's guilt beyond a reasonable doubt.

¶ 29    At trial, Tommie Hollis testified that on the morning of the shooting, he was at his apartment that he shared with numerous other people, including the victim. At approximately 6 a.m., Tommie was awoken by the sound of someone kicking at the front door of the apartment. Tommie got out of the bed he was sharing with his fiancé, Jennifer Smith, and went to the door and opened it before it was kicked in. Defendant, who Tommie knew, was on the other side of the door. Tommie noted that defendant was "angry. He was aggravated. He was mad at something." Tommie testified that defendant stayed and played dice for a while and left. Tommie fixed his door.

¶ 30    Tommie went to the gas station with Jennifer and saw defendant playing dice with "Tin Man" and "E-Boy" across the street. Later, Tommie heard a group of individuals shooting dice in the living room and left his bedroom to see what was going on. Tin Man, E-Boy, and defendant were shooting dice in the living room. Larry was sleeping on the floor by the television. Tommie watched until an argument broke out between the men playing dice. At the time, Tommie saw a black handgun with an extended magazine on the table near defendant. During the argument, E-Boy left the apartment, but Tin Man and defendant continued playing dice. Tin Man left momentarily to go to his bedroom. Tommie noticed that Tin Man did not take the gun on the table and did not return with any weapon. When Tin Man returned, another argument broke out between Tin Man and defendant over shooting dice for money. Tin Man left, leaving only defendant and the victim in the living room.

10

¶ 31    Tommie returned to his bedroom after approximately two to three minutes but could still hear arguing in the living room. Eventually, Tommie heard defendant say either, "Get the fuck out of folks crib" or "Get out of folks fuckin' crib." Tommie heard the victim say, "I didn't do nothing" and then heard a gunshot. Tommie then heard defendant say, "Call the ambulance." Defendant also said, "I should have killed the whole fucking house." Tommie later identified defendant in a photo lineup as the shooter and identified defendant in a surveillance video leaving the apartment building.

¶ 32    Jennifer testified that after she and Tommie left the apartment to go to the gas station at approximately 6:30 or 7:00 a.m. that morning, they came back and returned to the bedroom. Jennifer was not sure if Tommie ever left the bedroom after that. Jennifer heard Tin Man and defendant in the living room of the apartment playing dice and arguing. Jennifer stated that it sounded like defendant "wanted to shoot for five and Tin Man didn't want to." Eventually, the two voices stopped, and Jennifer heard a gunshot in the living room. Jennifer later identified defendant in a photo lineup as one of the men she heard in the living room and identified defendant in a surveillance video leaving the apartment building at the time of the shooting.

¶ 33    Later that day, Chicago Police Detective Evangelides located a fired bullet on the floor beneath the victim's body and a shell casing in the front area of the apartment at 5632 South Wabash. Detective Evangelides noted that there was a "high confidence ballistics correlation" between the shell casing and a firearm recovered as part of the unrelated arrest of Andre Anderson on July 26, 2016. Anderson had several alibis for the night of the shooting in this case.

¶ 34    Defendant correctly asserts that the evidence in this case was entirely circumstantial. Our supreme court has recognized that a criminal conviction may be based solely on

11

circumstantial evidence. *People v. Wheeler*, 226 Ill. 2d 92, 120 (2007). However, the same standard of review applies whether the evidence is direct or circumstantial. *Id*. at 116-18, It is not necessary that the trier of fact be satisfied beyond a reasonable doubt as to each link in the chain of circumstances in order to convict. It is sufficient if all the evidence taken together satisfies the trier of fact of the defendant's guilt beyond a reasonable doubt. *People v. Campbell*, 146 Ill. 2d 363, 380 (1992). Further, in a circumstantial evidence case the State is not required to show that the facts or circumstances proved exclude every reasonable theory of innocence. *People v. Bryant*, 113 Ill. 2d 497, 507-12 (1986).

¶ 35     Although there was not a witness to the shooting, Tommie's credible testimony was that there was a gun on the table near defendant when he was playing dice. In addition, Tommie testified credibly that there were only two people in the living room at the time of the shooting: defendant and the victim. The evidence established that the victim was shot in the chest and died from his wounds in the living room. The video surveillance showed defendant leaving the apartment building shortly after the time of the shooting. The evidence in this case, when viewed in the light most favorable to the State, established defendant's guilt beyond a reasonable doubt.

¶ 36     Defendant claims that the trial judge erred by failing to acknowledge and address the conflicts between Tommie's and Jennifer's testimony. We reject this claim.

¶ 37     This was a bench trial where the trial court was the trier of fact. We have discussed the evidence at length, finding that the evidence was sufficient to prove defendant's guilt beyond a reasonable doubt. The trial court specifically found Tommie and Jennifer to be credible witnesses. In a bench trial, a trial judge is presumed to know the law, and this presumption is rebutted only when the record affirmatively shows the contrary. *People v. Bowen*, 241 Ill. App. 3d 608, 622

(1993). It was the trial court's prerogative, as the trier of fact, to make credibility determinations and resolve any alleged inconsistencies in the evidence. See *People v. Vaughn*, 2011 IL App (1st) 092834, ¶ 24 ("As the trier of fact, the trial court is in the superior position to assess the credibility of witnesses, resolve inconsistencies, determine the weight to assign the testimony, and draw reasonable inferences therefrom"). We will not substitute our judgment for that of the trier of fact on these matters. *People v. Branch*, 2018 IL App (1st) 150026, ¶ 29. The finder of fact is not required to detail and explain inconsistencies that may exist when a line by line comparison of the testimony made. An experienced trial judge, as this judge is, knows that not all witnesses see, hear and recollect events in the same manner. One witness may hear or see something that another witness did not. That does not mean one of the witness is not credible. That is why the trier of fact is given the responsibility to weigh testimony and to resolve conflicts and inconsistencies in reaching its conclusions. The complained of differences between the testimony of Tommie and Jennifer dealing with what was said or not said before or after the shooting were for the trier of fact to resolve. Where the record, when viewed in a light most favorable to the State, supports a finding of proof beyond a reasonable doubt, we will affirm the conviction. We will not substitute our judgment.

¶ 38    Defendant argues that in finding him guilty, the trial judge relied on a series of factual findings that evince a mistaken recollection of the evidence and that all of those errors were adverse to defendant. Specifically, defendant argues that the trial court incorrectly recalled the evidence when he made the following findings: (1) the judge stated that Mr. Greer woke up "the whole house" by kicking the door to the apartment early on the morning of the shooting; (2) the judge found that, after answering the door, Mr. Hollis let Mr. Greer into the apartment; (3) the judge found that when Mr. Hollis went about repairing the door, "the testimony is that Mr.

Greer remained angry…."; (4) the judge found that, when Taylor and Greer argued while playing dice inside the apartment, "the discussions and the conversation was mostly elevated and attributed to the defendant Greer;" and (5) the judge found that Taylor and Greer were arguing about "somebody cheating on a five to ten dollar dice game."

¶ 39 The State argues that defendant has forfeited this argument by failing to object to the trial court's comments and by failing to raise this issue with specificity in his posttrial motion. To preserve an issue for appeal, a defendant must make a contemporaneous objection at trial and raise the issue in his posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). We disagree. Defendant was not required to object to the trial court's summary of the facts after defense counsel had argued the applicable law and facts. In *People v. Saldivar*, 113 Ill. 2d 256, 266 (1986), our supreme court ruled that defense counsel had not failed to preserve and issue for appeal by not objecting to the trial court. The court stated:

"After the argument in aggravation and mitigation, the court made its ruling during which the court made the statements now complained of. To preserve any error of the court made at that time, it was not necessary for counsel to interrupt the judge and point out …[the errors], especially in light of the argument that had preceded the ruling." *Id.*

Consequently, Greer's counsel was not required to object when the trial court misstated and misremembered the facts in making his ruling. Similarly, defendant included this issue in his posttrial motion when he argued that he was denied due process of law. *People v. Williams,* 2013 IL App (1st) 111116, ¶ 108.

¶ 40 The trial court's failure to recall or consider evidence crucial to the defense in a bench trial violates defendant's right to due process, and whether defendant's due process rights were denied is a question of law we review *de novo. Williams*, 2013 IL App (1st) 111116, ¶ 75.

14

However, the trial judge's statements complained of here are not instances of the court failing to recall or consider evidence. Rather, it was for the trial judge as the trier or fact in this case to determine the credibility of the witnesses and draw reasonable inferences from the facts.

¶ 41    Here, about one month after the conclusion of the trial, the trial court made its finding. The record shows that the trial court properly considered the evidence and testimony presented, determined the credibility of the witnesses, and drew reasonable inferences therefrom.  With respect to defendant's argument that the judge incorrectly stated that Mr. Greer woke up "the whole house" by kicking the door to the apartment early on the morning of the shooting, it  was entirely reasonable for the court to conclude that when defendant was kicking  Tommie's front door hard enough to "kick it in" or break it, that it would have been loud enough to wake people up, had they been sleeping. Whether the door kicking "woke the whole house" was not material to the question of who killed Terry and not essential to the finding of guilt.  The remainder of defendant's arguments regarding the court incorrectly remembering evidence are specifically belied by the record and are nothing more than speculation and conjecture.

¶ 42    Contrary to defendant's argument, Tommie did testify that after he opened the door to defendant and realized that defendant was "angry," "aggravated," and "mad" that defendant "was there for a while shooting dice,"  meaning that  defendant did not leave immediately. Given that a murder occurred shortly thereafter, it was entirely reasonable for the trial court to infer that  defendant remained  "angry" during the time in which Tommie began to or completed fixing his door.  The trial court also correctly recounted Tommie's and Jennifer's testimony regarding the argument between defendant and Tin Man about the dice game.  The following colloquy occurred during Tommie's testimony:

15

"PROSECUTOR: So Tin Man and the defendant are arguing at this time?

TOMMIE: Yes.

PROSECUTOR: What are they arguing about?

TOMMIE: The dice game.

PROSECUTOR: Do you know anything specific that you remember?

TOMMIE: It was about the dice game. I don't know if somebody cheated or what. It just escalated from that then.

PROSECUTOR: Was there a money figure or something else that kept coming back and forth?

TOMMIE: It was about the money though. I don't know who was cheating or what. It escalated from that.

PROSECUTOR: Do you know how much money?

TOMMIE: Five to ten dollars.

PROSECUTOR: Okay. So as this argument between Tin Man and the defendant are escalating, do you see where the gun is?"

Tommie clearly testified that the argument between Tin Man and defendant was about cheating and money in their dice game and that it "escalated." Jennifer testified that although she was in her bedroom, she could hear defendant and Tin Man playing dice. She said that their voices were "kind of loud" but that "Dommo [defendant] was the loudest. His voice is just loud to me period." We reject defendant's argument that his due process rights were violated here. By inferring the argument centered around cheating, the trial court did exactly as it was required to do as the trier of fact: assess the credibility of the witnesses and draw reasonable inferences from the evidence.

16

¶ 43    Defendant next contends that the circuit court "expressly relied on inadmissible evidence" in finding him guilty of first-degree murder.   Specifically, defendant contends that the circuit court commented on Tommie Hollis's testimony that, before the shooting, Tin Man said, "Stop waiving that gun at my cousin, " a statement that the court should not have considered because it had previously sustained an objection by the defense  during the State's direct examination of  Tommie.   The State argues that defendant has forfeited this argument.

¶ 44    To preserve an issue for appeal, a defendant must make a contemporaneous objection at trial and raise the issue in his posttrial motion.  *Enoch*, 122 Ill. 2d at 186. During cross-examination of Tommie,  defendant asked, "How much time passed after you went into the bedroom do you hear what you say is Tin Man leaving?" Tommie answered, "Because I hear him leaving like a couple of minutes, but I did hear him say, "Stop waving the gun at my cousin." Defendant did not object to the testimony as hearsay, instead responding, "I didn't ask you that." Defendant did not raise this issue in his posttrial motion.   As such, defendant has forfeited this argument on appeal. *Id*.

¶ 45    In his reply brief, defendant argues that we should review this issue for plain error.  To obtain relief under the plain error rule, a defendant must first show that a clear or obvious error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Once error has been established, a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so  egregious as to deny the defendant a fair sentencing hearing. *People v. Hall*, 195 Ill. 2d 1, 18 (2000). Under both prongs of the plain-error doctrine, the defendant has the burden of persuasion. *People v. Naylor*, 229 Ill. 2d 584, 593 (2008); *People v. Herron*, 215 Ill. 2d 167, 187 (2005). If the defendant fails to meet his burden, the procedural default will be honored. *Naylor*, 229 Ill. 2d at 593.   However, we need

not address whether plain error occurred here as the invited error doctrine precludes us from considering defendant's claim.

¶ 46    Defendant asked the question to which Tommie responded that he heard Tin Man say, "[s]top waiving that gun at my cousin." Although that was not the answer that defense counsel was looking for, Tommie's statement nevertheless went unchallenged by defendant. Defendant cannot now claim error. Invited error does not raise a mere forfeiture to which the plain-error exception might apply; it creates an estoppel that precludes plain-error analysis. *People v. Harding*, 2012 IL App (2d) 101011, ¶ 17.

¶ 47    Finally, defendant claims that in finding him guilty, the trial judge failed to draw an adverse inference against the State from its unexplained failure to call E-Boy and Tin Man, two crucial eyewitnesses to testify at trial.

¶ 48    In a criminal prosecution, the State is not required to call every witness listed by it as witnesses who may be called in its case, and no adverse inference may be drawn from the State's failure to call an available witness. *People v. Tillman*, 82 Ill.App.3d 430 (1980). Generally, if a potential witness is available and appears to have special information relevant to the case, so that his testimony would not merely be cumulative, and the witness's relationship with the State is such that he would ordinarily be expected to favor it, the State's failure to call the witness may give rise to a permissible inference that, if the witness were called, the witness's testimony would have been unfavorable to the State's case. *People v. Jimerson*, 69 Ill. App. 3d 403, 412 (1979); *People v. Irby*, 237 Ill.App.3d 38, 68 (1992). Such a negative inference is permissible only under certain circumstances: for example, where the State fails to call a witness who possesses unique knowledge of a crucial, disputed issue of fact (*People v. Williamson*, 78 Ill. App. 2d 90 (1966)), or where the government has caused

18

the absence of a material witness (*People v. Williams*, 40 Ill.2d 367, 240 N.E.2d 580 (1968)).
See also *People v. Doll*, 371 Ill. App.3d 1131 (2007).

¶ 49　　Citing *People v. Smith*, 3 Ill. App. 3d 64 (1971), defendant suggests that the State's
failure to call E-Boy and Tin Man, when the State knew they existed, permits us to draw the
inference that the testimony of these witnesses would have been unfavorable to the State.　In
*Smith*, the sole occurrence witness in a trial for murder by stabbing, testified that he had seen
the defendants holding a man down, searching his pockets, and, 10 minutes later, with a
crowd watching, dragging him down a staircase. *Id*. at 66. He was impeached by several prior
inconsistent statements and by his admission that he had been drinking heavily at the party.
*Id*.　In overturning the defendant's conviction, this court concluded that, given the witness's
weak testimony and the State's failure to produce any of the other occurrence witnesses that
allegedly witnessed the victim being dragged down the stairs, it could infer that the testimony
of those witnesses would not match the witnesses'. Thus, "the totality of the circumstances *
* * warrant[ed] invoking the inference that the witnesses available to the State, if called,
would have testified adversely to the prosecution." *Id*. at 67-68.

¶ 50　　*Smith* is distinguishable.　Unlike in *Smith*, Tommie's testimony was that at the time of
the shooting, only defendant and the victim were in the living room.　Tommie did not witness
the shooting, so he obviously did not see who was present. There is no evidence to suggest
that either E-Boy or Tin Man were present at the　time of the shooting.　As stated, this was a
circumstantial case; there was no eyewitness to the shooting.　We cannot infer that because
there was another witness who may have corroborated every detail of the dice game and the
comings and goings of the individuals involved in the game before the shooting, that the
shooting did not occur.　Equally, we cannot find that it was error for the trier of fact in not

drawing a negative inference based solely on the State's failure to present witnesses where there is no reasonable basis to infer that the absent witnesses were present at the time of the murder. Lastly, there is no evidence that the witnesses whom defendant claims the State should have called, E-Boy and Tin Man, were more available to the State than to defendant so there can be no inference that the State was withholding favorable defense evidence as the defendant speculates.

¶ 51                                    CONCLUSION

¶ 52    Based on the foregoing, the judgment of the circuit court should be affirmed but we vacate defendant's conviction for murder under count six and order that defendant's mittimus reflect a single conviction for first degree murder on count five.

¶ 53    Affirmed as modified.